TYSON FOODS, INC. and Lasso Acquisition Corp., Defendants, Cross–Claim Defendants and Counterclaim Plaintiffs Below, Appellants,

v.

AETOS CORP., Pelican Limited Partnership, Stark Investment, L.P. and Shepard Investments International, Ltd., Objectors Below, Appellees,

and

Baruch Mappa, Michael Taragin, David Shaev, Charles Miller, Olga Fried, Peter Robbins, Jerry Krim, Jeffrey Kassoway, Harriet Burt, Eric Meyer, Louise E. Murray, Marvin Masel and Rocco Landesman, Plaintiffs Below, Appellees,

and

IBP, Inc., Defendant, Cross–Claim Plaintiff, and Counterclaim Defendant Below, Appellee.

No. 124, 2002.

Supreme Court of Delaware.

Submitted: June 19, 2001.
Decided: July 24, 2002.

Anthony W. Clark, (argued), Robert S. Saunders, Julie A. Tostrup, Cynthia E. Carrasco, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware, for appellants, Tyson Foods, Inc. and Lasso Acquisition Corporation.

John L. Reed, Timothy R. Dudderar, Duane Morris, LLP, Wilmington, Delaware, Michael H. Schaalman, (argued), Cristina D. Hernandez–Malaby, Quarles & Brady, LLP, Milwaukee, Wisconsin, Mark C. Gardy, Karen E. Fisch, Abbey Gardy, LLP, New York City, for appellees, Aetos

Corp., Pelican Limited Partnership, Stark Investments, L.P., and Shepherd International, Ltd.

A. Gilchrist Sparks, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Richard A. Jochum, Dakota Dunes, South Dakota, for cross-claim plaintiff and counterclaim defendant below appellee, IBP, Inc.

BEFORE: VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

WALSH, J.

This is an appeal from a decision of the Court of Chancery refusing to vacate previous orders of the court ordering specific performance of a merger agreement and approving the settlement of related shareholder claims. The appellant, Tyson Foods, Inc. ("Tyson"), filed a timely appeal from the denial of vacatur but seeks to expand the scope of that appeal to include review of the merits of the subsidiary rulings as well. Appellees, plaintiffs in a related derivative action pending in a federal district court, have moved to dismiss Tyson's appeal to the extent it seeks review of rulings of the Court of Chancery beyond the denial of vacatur. On that limited question, we now conclude that the subsidiary rulings of the Court of Chancery are time barred or moot and not subject to review in the present appeal.

I

This controversy was spawned by the attempted merger of Tyson with a competitor in the food processing business, IBP, Inc. ("IBP") in early 2001. In the previous year, IBP had been the subject of a planned management-sponsored leveraged buy-out and an unsolicited offer from a third party. These efforts led to a series of stockholder class actions in the Court of Chancery and the U.S. District Court for

the District of Delaware challenging management's actions. Following the announcement of the Tyson–IBP agreement, that proposal was challenged as well and both Tyson and IBP became defendants in the Court of Chancery shareholder action.

In March, 2001, Tyson, apparently disenchanted with the merger prospect, filed suit in Arkansas to rescind its agreement with IBP. IBP responded by seeking specific performance of the merger agreement in the Court of Chancery through the filing of a cross-claim in the consolidated shareholder action. Eventually, the dispute was submitted to the Court of Chancery on an expedited basis and, on June 15, 2001, the court issued a lengthy opinion (the "post-trial opinion") rejecting Tyson's attempt to withdraw from the merger agreement. In effect, the Court of Chancery ruled that IBP and the IBP shareholders were entitled to specific performance.

Shortly after the Court of Chancery issued its post-trial opinion, federal securities suits were filed against Tyson and its officers and directors (the "federal actions"). The thrust of the federal actions was that the Tyson defendants had violated the federal securities laws by, among other things, issuing a press release which contained false and materially misleading information regarding Tyson's reasons for terminating the merger agreement. The federal actions were brought by IBP stockholders who sold their stock allegedly in reliance upon the truth of Tyson's communications regarding its basis for terminating the merger agreement and its accusations of fraud against IBP. The federal plaintiffs relied, in part, on several factual findings made by the Court of Chancery in its post-trial opinion.

Within two weeks of the Court of Chancery decision, Tyson and IBP reached an agreement to consummate the merger.

On June 27, 2001, the Court of Chancery entered an order that recited the parties' settlement but acknowledged that because all the claims in the case had not been resolved or adjudicated, the order "is not presently appealable as of right." Tyson promptly set about to negotiate a resolution of the shareholders' actions. On June 29, 2001, the parties submitted a stipulation of settlement to the Court of Chancery which, in addition to resolving the specific performance action, would release all claims by IBP shareholders, including those in the federal actions.

On August 3, 2001, the Court of Chancery held a hearing on the proposed settlement. At the hearing, the status of the federal action became a point of controversy. Tyson sought court approval for the settlement on terms that would include release of all claims by IBP shareholders directed to the merger, including those in the federal action. Objectors, the present appellees, representing the plaintiffs in the federal action, contested the release of their claims. Tyson argued that the federal action should also be released because the federal plaintiffs were advancing claims based upon factual findings made by the Court of Chancery in its post-trial opinion. The Court of Chancery agreed with the federal plaintiffs and approved the settlement with a "carve-out" for the federal action. The August 3 order settled "[t]he Plaintiffs' claims asserted in the Consolidated Action on behalf of the Class . . . ." It further recited: "Without affecting the finality of this *Order and Final Judgment,* jurisdiction is hereby retained by this Court for the purpose of protecting and implementing the Stipulation and the terms of this *Order and Final Judgment* . . . ." (emphasis added).

On August 6, three days after its entry, the Register in Chancery advised counsel for the parties that "an order of final

judgment was signed by" the Court of Chancery. Counsel for Tyson responded in a letter to the court, acknowledging the Register's notice of the entry of a "Final Judgment" but noting, with the concurrence of IBP's counsel, that "no final order or judgment has been entered by the Court with respect to the cross-claims asserted by IBP, Inc. and Tyson Foods, Inc. against each other. We expect to contact the Court promptly after consummation of the merger to discuss the disposition of the matter at that time." The merger between Tyson and IBP closed on September 28, 2001, and effective that date IBP as a separate legal entity ceased to exist.

On January 7, 2002, Tyson filed a motion in the Court of Chancery to vacate the post-trial opinion in order to negate the effect of the court's factual findings, which were sought to be used for collateral estoppel purposes in the federal action. Since IBP was no longer a responding entity and the IBP shareholders in the Chancery action had settled their claims, Tyson served its motion on the plaintiffs in the federal action. Those individuals vigorously disputed Tyson's efforts in the Court of Chancery and, as appellees in this Court, have moved to limit the scope of the present appeal.

In rejecting Tyson's vacatur motion, the Court of Chancery concluded that its order of August 3, 2001 approving settlement of both the shareholder action and IBP's claim for specific performance was a final judgment, entered "at Tyson's behest." Since Tyson had chosen to waive its appellate rights with full knowledge of the intentions of the federal plaintiffs to use certain factual findings in the post-trial opinion for preclusive effect, the court concluded that there was no equitable basis for granting vacatur. The Court of Chancery's decision denying vacatur was entered on February 11, 2002. On March 12, 2002, Tyson filed a notice of appeal seeking review of both the order denying vacatur and the post-trial opinion, as implemented by the court's order of June 27, 2001 and four previous rulings, adverse to Tyson, made prior to trial.

The federal plaintiffs, named as appellees in the present appeal, have moved to dismiss six of the seven rulings appealed by Tyson. The appellees argue that, except for the Court of Chancery's ruling denying vacatur, all other decisions sought to be appealed are either time barred or moot. In response to this motion, we ordered briefing and argument limited to the question of the permissible scope of Tyson's March 12, 2002 appeal.

## II

■ An aggrieved party can appeal to this Court only after a final judgment is entered by the trial court. Del. Const. art. IV, § 11(1)(a); *Harrison v. Ramunno,* 730 A.2d 653 (Del.1999). A final judgment is generally defined as one that determines the merits of the controversy or defines the rights of the parties and leaves nothing for future determination or consideration. *Showell Poultry, Inc. v. Delmarva Poultry Corp.,* 146 A.2d 794, 796 (Del.1958); *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). In short, a final judgment is one that determines all the claims as to all the parties. The test for whether an order is final and therefore ripe for appeal is whether the trial court has clearly declared its intention that the order be the court's "final act" in a case. *J.I. Kislak Mortgage Corp. v. William Matthews Builder, Inc.,* 303 A.2d 648, 650 (Del.1973) (holding order is deemed final if decision is trial court's last act in disposing of all justiciable matters within its jurisdiction).

■ Despite the foregoing well-settled rules, the proper application of the final

judgment rule continues to be the subject of frequent litigation in federal and state courts. 46 Am.Jur.2d *Judgments* §§ 200–202 (1994).[1] This case illustrates the problem that may arise when a party seeks to appeal an order that the trial court believed was final when entered. Although the trial court's intention to enter a final order is an essential element in the inquiry, the mere use of the term "final judgment" may not be determinative if a party, with the acquiescence, tacit or otherwise, of the court has left the docket open for further proceedings. Here, the appellees contend that the August 3, 2001 order was final not only because it was so denominated but also because the Vice Chancellor who entered it ruled that such was his intention when he entered it. Given the limited scope of the present motion to dismiss, we are not required to examine the correctness of the Vice Chancellor's order denying vacatur, but simply whether, as a matter of law, the post-trial decision and the earlier subsidiary rulings became final through the August 3, 2001 order, thereby precluding review of all post-trial findings and conclusions.

■ The policy underlying the final judgment rule is one of efficient use of judicial resources through disposition of cases as a whole, rather than piecemeal. *Showell Poultry*, 146 A.2d at 795. If discrete rulings are of such significance that immediate review is warranted, and the criteria for interlocutory review are met, *Sup.Ct.R.* 42 offers relief. But once interlocutory rulings achieve finality at the trial level, through incorporation in the final judgment of the trial court, review of those

subsidiary rulings must be achieved through a timely appeal of that final order.

■ At the time of the settlement hearing conducted by the Court of Chancery on August 3, 2001, the court had opined at length on the merits of IBP's specific performance claim. Significantly, the court's post-trial opinion had been rendered in the context of a shareholders' action which led, in turn, to IBP's cross claim against Tyson for specific performance. Thus, at the time Tyson sought approval of its omnibus settlement, it placed before the court all claims then assertable by all the parties to the litigation. The Court of Chancery in its August 3, 2001 order approved the settlement of all claims before it on the terms requested, save one. It permitted a carve-out of the federal claims, despite Tyson's protestation that the federal plaintiffs intended to make use of certain of the factual findings contained in the post-trial opinion in the federal litigation.

Although Tyson continues to argue that the August 3 order was not final as to its dispute with IBP, it fails to identify what was left for the Court of Chancery to do. The court's post-trial opinion disposed of the specific performance dispute, leaving open only the issue of money damages for Tyson's delay. By the time of the stipulation and order of June 27, 2001, which the parties denominated as "The Post–Trial Order," Tyson had agreed to consummate the transaction and the parties left for another day, and further negotiation, the award of money damages and the resolution of the shareholder claims. Further settlement negotiations were pursued and the subsequent August 3 order of the Court of Chancery resolved the question of

---

1. Although not implicated here, exceptions to the final judgment rule permit an appellate court to exercise the power of review even in the absence of a final judgment, *e.g.,* collateral order rule. *Evans v. Justice of the Peace Court*

*No. 19,* 652 A.2d 574, 576 (Del.1995); *citing Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

money damages, disposed of the shareholder actions (subject to the carve-out for federal claims) and thus resolved the remaining issues in the case. All that was left was the execution or implementation of the court's order. *See Mummert v. Wiggin,* 616 A.2d 325, 326 (Del.1992) (if nothing in fact or law remains except for enforcement of the order, it is a final order).[2]

The August 3 order recites that "the parties to the Stipulation are hereby directed to consummate the Settlement in accordance with the terms and conditions set forth in the Stipulation; and the Register in Chancery is directed to enter and docket this Order and Final Judgment in the Consolidated Action." *In re IBP, Inc. Shareholder Litig.,* C.A. No. 18373 (Del. Ch., August 3, 2001). The letter from Tyson's counsel responding to the Register in Chancery's notice of having entered the final order, as directed by the court, does not suspend the order's finality. That letter, although directed to the court, did not seek an amendment of the August 3 order nor any other action by the court. It simply noted that the IBP/Tyson dispute was dependent on the consummation of the merger, an event which subsequently occurred. In any event, the finality of a court's order is not determined by reservations of the parties to which it applies but by the court itself. When the trial court

intends for its order to resolve all outstanding issues, and says so, its order is final.

As a practical matter, once the IBP/Tyson merger was consummated there was no separate entity to the cross claim against whom an appeal could be taken. There was the prospect that Tyson could appeal from the Court of Chancery's carve-out ruling, embedded in the August 3 final order, but Tyson declined to do so. The federal plaintiffs appeared at the settlement hearing as objectors and were thus parties to the proceeding and would have been required to defend any appeal from a favorable ruling on their behalf. But, as the Vice Chancellor noted, Tyson "chose to settle" and "gave up its statutory right to appeal voluntarily and without coercion."

### III

■ Apart from the bar of finality, Tyson's attempt to seek review of matters disposed of through the August 3 decision raise concerns of mootness.[3] Tyson concedes that the merger that Tyson was ordered to specifically perform has been consummated and the aggrieved shareholders have been paid the consideration called for in the settlement of the class action. Tyson argues, however, that this

---

**2.** Paragraph 10 of the August 3 order authorized the court to retain jurisdiction "for the purpose of protecting and implementing the Stipulation as the terms of this Order and Final Judgment." This standard language was obviously directed to the successful consummation of the merger (which concededly occurred) and the payment of the settlement consideration to the shareholders. It could not provide the basis for relitigating matters involving non-parties to the Stipulation.

**3.** To a degree, our consideration of the question of whether this Court should decline review of matters subsumed within the August 3, 2001 judgment on grounds of mootness

overlaps the analysis that the Court of Chancery pursued, and which we decline to consider at this time, in rejecting Tyson's vacatur motion. The Court of Chancery's refusal to vacate its August 3 judgment was based, in part, on Tyson's "mature judgment ..." "that its own actions would moot any controversy between itself, on the one hand, and IBP and its stockholders, on the other." *In re IBP Shareholders Litig.; IBP, Inc. v. Tyson Foods,* 793 A.2d 396, 407, n. 30 (Del.Ch.2002). Our mootness analysis, however, implicates policy considerations that prompt an appellate court to grant or decline review of moot controversies.

Court should exercise its discretion and hear the appeal of issues determined in the post-trial opinion because of the collateral consequences that attach to the Court of Chancery's decision.

■ The primary function of an appellate court is to exercise its power of review over actual controversies that remain adversarial following a trial courts' decisions. *General Motors Corp. v. New Castle County*, 701 A.2d 819, 823 (Del. 1997). In the absence of an actual controversy, an appellate court will consider the subject matter of the appeal moot. A controversy may become moot either because a party has lost standing to assert its merits or because the dispute is no longer amenable to judicial resolution. *Id.* The controversy "must be between parties whose interests are real and adverse." *Rollins International, Inc. v. International Hydronics Corp.*, 303 A.2d 660, 662–63 (Del.1973). Even where a matter sought to be reviewed is considered moot, an appellate court may nonetheless grant review if the underlying controversy would otherwise evade review or implicate an important public policy concern. *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 218 (Del. 1990); *McDermott Inc. v. Lewis*, 531 A.2d 206, 211 (Del.1987).

Tyson argues that this Court should exercise its discretion and hear its appeal of the August 3, 2001 judgment because of the collateral consequences that attach to the Court of Chancery's decision. In particular, Tyson seeks review of certain of the trial court's factual findings in the post-trial opinion, which the federal plaintiffs, present appellees, wish to assert in the ongoing federal litigation. We are not persuaded that Tyson's argument justifies departure from this Court's jurisprudence on mootness.

Preliminarily, we note that the Court of Chancery findings which may be subject to collateral estoppel will evade review because Tyson elected not to exercise its right of appeal from the August 3 order.[4] Thus, to a degree Tyson's present predicament is self-imposed. At the time of the settlement hearing before the Court of Chancery, Tyson was aware that the federal plaintiffs were attempting to use the factual findings in the post-trial opinion. Indeed, this was the basis for its urging the Court of Chancery to reject the carve-out. Once the Court of Chancery approved the federal carve-out through its August 3 order, Tyson was aware of the collateral estoppel consequences of that ruling. For reasons known only to Tyson, it complied with the settlement terms and waited more than three months after the merger was consummated before seeking vacatur of the post-trial decision.

The primary basis for not accepting review of the matters decided in the post-trial decision is that the parties to the specific performance action, in addition to resolving their dispute, no longer have adversarial existence. IBP, having achieved specific performance and having been absorbed by Tyson, obviously has no interest in, or standing to, defend an appeal from the post-trial opinion. Even if Tyson can articulate an adverse consequence resulting from the post-trial opinion, there is no entity to assert the contrary. The federal plaintiffs, present appellees, were not parties to the specific performance litigation and, indeed, did not participate in any fashion in the Court of Chancery proceedings until the August 3 settlement hearing. Their participation at that time was made

**4.** Even if Tyson viewed the August 3 order as not final, despite the clear language of the order itself, it could have sought interlocutory review of either the carve-out ruling or the implementation of the post-trial opinion, pursuant to *Supr.Ct.R.* 42.

necessary because Tyson sought to have the federal litigation resolved through settlement of the Chancery action. For this Court to opine on the rulings contained in the post-trial opinion, as implemented through the August 3 judgment, would require the Court to engage in reviewing a moot controversy in which only one private party has an interest. We decline to do so.

Based on the foregoing considerations, we conclude that the scope of the present appeal should be limited to the correctness of the Court of Chancery's February 11, 2002 decision denying vacatur. To that extent, the appellees' motion to dismiss the appeal, in part, is GRANTED. The Clerk shall issue a revised brief schedule, limited to the restricted scope of this appeal.