MENTOR GRAPHICS CORPO-
RATION, et al., Objectors
Below, Appellants,

v.

Howard SHAPIRO, Plaintiff
Below, Appellee,

and

Glen M. Antle, et al., Defendants
Below, Appellees.

Mentor Graphics, Corporation, et al.,
Plaintiffs Below, Appellants,

v.

Quickturn Design Systems, Inc., et al.,
Defendants Below, Appellees.

Nos. 492, 2002, 497, 2002.

Supreme Court of Delaware.

Submitted: March 4, 2003.
Decided: March 25, 2003.

---

8. 30 *Del.C.* § 1903(c).

Kevin G. Abrams, J. Travis Laster (argued), Peter B. Ladig, and Kelly C. Ashby, Richards, Layton & Finger, Wilmington and Marc W. Rappel, Latham & Watkins, Los Angeles, CA, for Appellants Mentor Graphics Corp. and MGZ Corp.

David C. McBride (argued) and Danielle Gibbs, Young, Conaway, Stargatt & Taylor, Wilmington, for Appellees Cadence Design Systems, CDSI Acquisition, Inc., and Quickturn Design Systems, Inc.

Kenneth J. Nachbar, Morris, Nichols, Arsht & Tunnell, Wilmington, for Appellees Former Directors.

Norman M. Monhait, Rosenthal Monhait Gross & Goddess, P.A. Wilmington and Stanley D. Bernstein (argued) and Abraham I. Katsman, Bernstein Liebhard & Lifshitz, LLP, New York City, for Appellee Howard Shapiro.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

PER CURIAM:

This is an appeal by an unsuccessful party to an acquisition contest from a decision of the Court of Chancery rejecting that party's attempt to secure an award of counsel fees incident to the settlement of a related class action suit attacking the original merger effort. The Court of Chancery denied the appellants' effort as untimely. We agree and affirm.

I

This is the latest chapter in Mentor Graphics Corporation's ("Mentor") failed attempt to acquire Quickturn Design Systems, Inc. ("Quickturn"). The extensive background of the dispute is set forth in a previous decision of this Court in which we held that a delayed redemption provision ("DRP") in the Quickturn shareholder rights plan was invalid. *See Quickturn Design Sys. v. Shapiro,* 721 A.2d 1281

(Del.1998). We recount here only those facts necessary to an understanding of the present posture of this matter.

In January 1999, it was apparent that Cadence Design Systems, Inc. ("Cadence") would prevail in the auction battle for Quickturn. On January 7, 1999, the Court of Chancery denied Mentor's last ditch effort to scuttle the Cadence–Quickturn merger. The next day Mentor withdrew its tender offer and abandoned all further attempts to acquire Quickturn. The Cadence–Quickturn merger was scheduled for submission to a stockholder vote on May 21, 1999.

On May 10, 1999, Quickturn stockholder Howard Shapiro ("Shapiro"), who was the lead plaintiff in the stockholder class litigation (the "Class"), sought a temporary restraining order ("TRO"), in a separate action (*"Shapiro III"*), enjoining consummation of the merger until a "fund" could be created from which Class counsel fees could be paid.[1] Six days later, the parties to the class action entered into an agreement to settle the matter in a form that permitted the full merger consideration to be paid to the Quickturn stockholders, and also avoided the TRO hearing in Shapiro III. In particular, Cadence and Quickturn agreed that Quickturn would pay Class counsel's fees and expenses up to $825,000 in exchange for a broad release of all claims pertaining to the litigation.[2] The

1. Shapiro represented the class of stockholder plaintiffs who challenged both the DRP (*"Shapiro I"*) and the auction process through which Cadence made the prevailing bid for Quickturn (*"Shapiro II"*). Shapiro filed a parallel fee application in *Shapiro I* seeking an award of $2,044,800, representing a percentage of what he believed to be the $51,000,000 value his litigation produced, as well as for the 1,500 hours Class counsel apparently logged in the matter.

2. The release provides in relevant part that:
   all claims, rights and causes of action (including any claims for costs, attorneys' fees

or expenses . . .), known or unknown, which Shapiro or any member of the Class ever had, now have or hereafter can, shall or may have whether directly, derivatively, representatively or in any other capacity against [Cadence and Quickturn] . . . by reason of or arising out of or relating to or in connection with any of the following . . . (iv) the facts, matters, transactions, actions or conduct, actual, alleged or which could have been alleged in *Shapiro I, Shapiro II, Shapiro III, Mentor Federal, Mentor Chancery I* [the Mentor DRP Litigation] or *Men-*

merger was approved by the stockholders, and the deal closed on May 25, 1999.

In July of 2000, after a period of relative tranquility, Mentor filed fee applications in both the DRP Litigation (*"Mentor I"*), and the Auction Litigation (*"Mentor II"*). The Court of Chancery denied Mentor's applications. *Mentor Graphics Corporation v. Quickturn Design Systems, Inc.*, 789 A.2d 1216 (Del.Ch.2001) (the "Fee Opinion"). On February 13, 2002, the Court of Chancery dismissed *Mentor II* with prejudice, and on March 22, 2002, Mentor appealed the denial of fees in Mentor II. On April 17, 2002, Mentor sought a stay of that appeal pending consolidation of that appeal with the appeal it intended to file in *Mentor I*. On the same day, Mentor filed a motion in the Court of Chancery seeking a final order in *Mentor I*. On April 29, 2002, this Court granted a stay in the *Mentor II* appeal without deciding whether the time to appeal *Mentor I* had expired.

On July 25, 2002 the Court of Chancery held a hearing on the settlement of the *Shapiro II* litigation. Although Mentor objected, the Court of Chancery approved the settlement at the end of oral argument. Five days later, the Court of Chancery heard oral argument on Mentor's motion for a final order in *Mentor I*. The Court of Chancery denied the motion, holding that the Fee Opinion constituted the final order in *Mentor I*. Mentor appeals both the denial of the "final order" motion, as well as the approval of the settlement of *Shapiro II*.

## II

We review *de novo* the Court of Chancery's denial of Mentor's motion for a "final order" in *Mentor I*. *See, e.g., Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 580 (Del.2002) ("[W]e are [ ] required to examine…whether, as a matter of law, the post-trial decision and the earlier subsidiary rulings became final through the August 3, 2001 order, thereby precluding review of all post-trial findings and conclusions."). Mentor argues that the Court of Chancery erred as a matter of law by failing to follow controlling precedent when deciding whether to grant Mentor's request for a "final order" in *Mentor I*. In particular, Mentor argues that a judgment is final only when the trial court "clearly declares" that it is making a final ruling in the case. Quickturn/Cadence and Shapiro argue that a judgment is final when the trial court, by its order, leaves nothing further to be resolved, and thus effectively ends the litigation on the merits.

"[A] final judgment is one that determines all the claims as to all the parties." *Tyson Foods*, 809 A.2d at 579. While the primary inquiry is "whether the trial court [ ] clearly declared its intention that the order be [its] 'final act' in the case[,]" the "mere use of the term 'final judgment' may not be determinative[.]" *Id.* at 579–580. Rather, essential to the analysis is whether the order "ends the litigation on the merits and leaves nothing for the trial court to do but. execute the judgment." *See Lipson v. Lipson*, 799 A.2d 345, 347 (Del.2001) (quoting *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

We conclude that the Court of Chancery properly denied Mentor's belated request for a more formal "final judgment" in *Mentor I*. On December 3, 1998, the Court of Chancery entered a "Final Order and Judgment Pursuant to Rule 54(b)" on the claims litigated at trial in *Mentor I*. The only matter left unresolved after that order was Mentor's request for attorneys' fees and expenses. Therefore, when the Court of Chancery issued its final decision on the merits of Mentor's fee application

*tor Chancery II* [the Mentor Auction Litigation].

on August 14, 2001, 789 A.2d 1216, there was nothing left for the court to resolve in *Mentor I.* Notwithstanding Mentor's concern for judicial economy, the appropriate, and practical, inquiry is whether anything is left unresolved after the order is issued. Here, there can be no doubt that the Fee Opinion disposed of "all the claims as to all the parties[,]" *Tyson Foods,* 809 A.2d at 579, in *Mentor I.*[3]

### III

Next, we review for an abuse of discretion the Court of Chancery's approval of the settlement of *Shapiro II. See, e.g., Polk v. Good,* 507 A.2d 531, 536 (Del.1986) ("When a settlement has been approved as fair and reasonable we must find the evidence so strongly to the contrary as to amount to an abuse of discretion.") (citing *Rome v. Archer,* 197 A.2d 49 (Del.1964)). So long as the trial court's conclusions in that regard "are supported by the record and are the product of an orderly and logical deductive process, they will be accepted." *Id.* (citing *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del.1972)).

Mentor argues that the Court of Chancery abused its discretion by blithely approving the settlement of *Shapiro II* despite the fact that the purported claims released in exchange for the payment of attorneys' fees and expenses were moot. Shapiro and the Quickturn/Cadence Appellees argue that while the claims released by the class were "exceedingly weak" and "impractical" factually they were not moot as a matter of law.

Mootness arises when controversy between the parties no longer exists such that a court can no longer grant relief in the matter. *See First Allied Connecti-*

*cut Corp. v. Leeds,* 520 A.2d 1044 (Del. 1987) (ORDER); *Family Court v. Alexander,* 522 A.2d 1265, 1267 (Del.1987); *Sannini v. Casscells,* 401 A.2d 927, 929–930 (Del.1979). A matter may become moot "if the legal issue in dispute is no longer amenable to a judicial resolution; or, if a party has been divested of standing." *General Motors Corporation v. New Castle County,* 701 A.2d 819, 821 (Del.1997).

The Court of Chancery properly approved the settlement between the parties. The legal issues left unresolved in *Shapiro II,* while indeed eroded by the subsequent business events surrounding the Cadence/Quickturn merger, were not moot as a matter of law. In particular, despite the fact that Mentor eventually withdrew from the contest for Quickturn, Shapiro could have continued to press his claim that Quickturn did not properly conduct the auction for the company once a change of control became inevitable. While Quickturn/Cadence had no obligation to pay Class counsel's fees, they secured a broad release—in order to end all litigation in the matter—in exchange for payment of the fees. Because the claims were not moot, the Court of Chancery did not abuse its discretion in approving the settlement.

NOW, THEREFORE, IT IS ORDERED that the judgments of the Court of Chancery be, and the same hereby are, AFFIRMED.

---

**3.** Mentor argues that additional claims regarding, *inter alia,* Section 203 of the DGCL were unresolved by the trial court, and that despite the fact that these claims were moot, a separate final order was necessary to resolve these claims. By acknowledging that these claims were moot, however, Mentor implicitly concedes that no *justiciable* claims were left unresolved after the Court of Chancery issued the Fee Opinion.