# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| B/E AEROSPACE, INC. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N20C-01-187 |
| | ) PRW CCLD |
| J.A. REINHARDT HOLDINGS, LLC, | ) |
| ARLINGTON TSI INVESTMENTS, LLC, | ) |
| MADISON CAPITAL FUNDING LLC | ) |
| AUDAX MEZZANINE FUND, L.P., | ) |
| AUDAX CO-INVEST, L.P., | ) |
| AUDAX TRUST CO-INVEST, L.P., | ) |
| AFF CO-INVEST, L.P., | ) |
| ARES CAPITAL CORPORATION, | ) |
| NORTHWESTERN MUTUAL, | ) |
| CSP EQUITY PARTNERS 41, LLC, | ) |
| ROBERT TERENZI, DALE JESSICK, | ) |
| DAVE ECKLAND, ED GAGER, | ) |
| BLAIR GAIDA, SAL SCILINGO, | ) |
| HENRY T. LITTLE, JR., EJ MONDOR, | ) |
| RT HUNT, TOM LAPPIN, BILL ORR, | ) |
| DOUG PIPER, LEE CROUCH, KAY IRVIN, | ) |
| BARRY TATE, MARGUERITE BURNETTE, | ) |
| BOB GILMAN, TOM BROWNING, | ) |
| GREG TUCKER, DAVID HELMS, | ) |
| MIKE MASTERGEORGE, STEVE HORTON, | ) |
| ROBERT MANNING, CHRIS BELL, | ) |
| KEVIN ROWAN, VINCE CORTI, | ) |
| YTZHAK LCHE GEWELBER, | ) |
| JIM JENKINS, JOHN DARMODY, | ) |
| SCOTT DUPRE, DAVID REYNOLDS, | ) |
| BRIAN DIETZ, DANIELLE KEANEY, | ) |
| MOHAMED SHAHIN, and | ) |
| SCOTT CHESTER, | ) |
| | ) |
| | ) |
| Defendants. | ) |

Submitted: July 1, 2020
Decided: July 21, 2020

*Upon Defendants' Motion to Dismiss,*
**GRANTED**.

## MEMORANDUM OPINION AND ORDER

Davis Wright, Esquire, and James Ray, Esquire (*pro hac vice*) (argued), ROBINSON+COLE LLP, Wilmington, Delaware, *Attorneys for Plaintiff.*

Philip Lee Trainer, Jr., Esquire (argued), and Marie Degnan, Esquire, ASHBY & GEDDES, P.A., Wilmington, Delaware, *Attorneys for Defendants.*

**WALLACE, J.**

B/E Aerospace, Inc. ("B/E Aerospace") brings this action against dozens of entities and individuals ("Defendants") who are the former owners of certain capital stock B/E Aerospace acquired through a Security Purchase Agreement ("SPA").[1] As part of that transaction, Defendants set up an escrow account ("Escow") from which to make post-transition payments.

B/E Aerospace filed suit in the Court of Chancery[2] alleging that degraded environmental conditions of a South Carolina site ("Simpsonville Site") breached the SPA's warranties. B/E Aerospace later obtained transfer to the Superior Court.[3] B/E Aerospace's Complaint alleges two counts—first, an action for damages for breach of the SPA's warranties and representations, and second a prayer for declaratory judgment that liability for that breach can proceed against the Defendants on a pro rata basis if the Escrow is exhausted.

Defendants have moved to dismiss the suit as unripe (with respect to the Escrow) and moot (with respect to already-accrued environmental remediation expenses).

---

[1]  Am. Compl. ¶¶ 1–14 (D.I. 1).

[2]  Ver. Compl., *B/E Aerospace, Inc. v. J.A. Reinhardt Holdings, LLC, et. al*, C.A. No. 2019-0748-VC (Del. Ch. Sept. 18, 2019) (Del. Ch. 1).

[3]  Trans. Order, *B/E Aerospace, Inc. v. J.A. Reinhardt Holdings, LLC, et. al*, C.A. No. 2019-0748-VC (Del. Ch. Jan. 6, 2020) (Del. Ch. D.I. 9); *see also* Am. Compl. ex. 1 (D.I. 1).

## I. APPLICABLE LEGAL STANDARDS

A ripeness challenge is an attack on the subject matter jurisdiction of the Court, and so falls under Superior Court Civil Rule 12(b)(1).[4] "Delaware courts decline to exercise jurisdiction over a case unless the underlying controversy is ripe, *i.e.*, has matured to a point where judicial action is appropriate."[5] "Ripeness is analyzed on a claim-by-claim basis."[6] And "[t]he burden of establishing the Court's subject matter jurisdiction [over a claim] rests with the party seeking the Court's intervention."[7] Jurisdiction is determined based on the allegations on the face of the complaint, "assum[ing] that all material factual allegations are true."[8] Such challenges are "far more demanding of the non-movant" than Rule 12(b)(6) motions

---

[4] *See Ladenburg Thalmann Fin. Servs., Inc. v. Ameriprise Fin., Inc.*, 2017 WL 685577, at *3 (Del. Super. Ct. Jan. 30, 2017) ("[A] Motion to Dismiss for lack of ripeness, on the other hand, 'is properly considered under Superior Court Civil Rule 12(b)(1) for lack of subject matter jurisdiction.'") (quoting *Homeland Ins. Co. of N.Y. v. Corvel Corp.*, 2011 WL 7122367, at *3 (Del. Super. Ct. Nov. 30, 2011)); *Bebchuk v. CA, Inc.*, 902 A.2d 737, 740 (Del. Ch. 2006) ("Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction.").

[5] *XL Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014) (internal citations omitted).

[6] *Athene Life and Annuity Co. v. American General Life Insurance Co.*, 2020 WL 2521557, at *11 (Del. Super. Ct. May 18, 2020).

[7] *State ex rel. French v. Card Compliant, LLC*, 2017 WL 1483523, at *8 (Del. Super. Ct. Apr. 21, 2017) (quoting *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007)).

[8] *Janowski v. Division of State Police, Dept. of Safety and Homeland Sec., State*, 981 A.2d 1166, 1169 (Del. 2009).

to dismiss, and "the Court need not accept Plaintiff's factual allegations as true [but] is free to consider facts not alleged in the complaint."[9]

By contrast, mootness—another species of justiciability challenge[10]— does not always mandate dismissal.[11] "Mootness arises when controversy between the parties no longer exists such that a court can no longer grant relief in the matter."[12] "The doctrine of mootness requires a court to dismiss a claim if the substance of the dispute disappears due to the occurrence of certain events following the filing of an action."[13] And while "a controversy that has become moot normally will be dismissed,"[14] this Court has the discretion to hear matters "which are capable of repetition but would, upon dismissal, evade review . . . [when the litigant] retain[s]

[9]   *Appriva Shareholder Litigation Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (citing *Phillips v. County of Bucks*, 1999 WL 600541, at *1 (E.D.Pa. Aug. 9, 1999)).

[10]   *Cresent/Mach I Partners, L.P. v. Dr. Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. 2008) ("Delaware courts analyze mootness and ripeness in determining whether a justiciable controversy exists. Our law requires that a dispute not be moot and that it be ripe for adjudication to avoid wasting judicial resources on academic disputes.").

[11]   *See Howell v. Justice of the Peace Court No. 16*, 2007 WL 2319147, at *5 (Del. Super. Ct. Jul. 10, 2007); *see also Glazer v. Pasternak*, 693 A.2d 319, 320–21 (Del. 1997) ("Mootness does not mandate dismissal, however, if the issue on appeal is one that is likely to recur."); *Gen. Motors Corp. v. New Castle County*, 701 A.2d 819, 824 n.5 (Del. 1997) ("Two recognized exceptions to [the] mootness doctrine are situations that are capable of repetition but evade review and matters of public importance.").

[12]   *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 632 (Del. 2013) (quoting *Mentor Graphics Corp. v. Shapiro*, 818 A.2d 959, 963 (Del. 2003)).

[13]   *NAMA Hldgs., LLC v. Related World Market Center, LLC*, 922 A.2d 417, 435 (Del. Ch. 2007).

[14]   *Glazer*, 693 A.2d at 320.

a sufficient personal stake in the litigation to move to the next phase of the proceedings, despite the mootness of his individual claim."[15] Too, "if the [litigant's] alleged injury still exists despite the occurrence of intervening events, a justiciable controversy remains, and the mootness doctrine will not operate to deprive a court of jurisdiction to hear the case."[16]

Both ripeness and mootness challenge a court's subject matter jurisdiction and so are analyzed under Rule 12(b)(1).[17] As subject matter jurisdiction challenges, both might be raised *sua sponte* by the Court at any time.[18] And for both, the Court pragmatically determines whether the dispute is currently concrete enough to justify adversarial litigation.[19] The key distinction is that mootness only justifies dismissal

---

[15] *Stratton v. American Independent Ins. Co.*, 2011 WL 3812570, at *3 (Del. Super. Ct. Aug. 12, 2011).

[16] *NAMA Hldgs.*, 922 A.2d at 435.

[17] *Id.* at n.43 (noting in mootness challenge: "Because the requirement of an actual controversy goes directly to the court's subject matter jurisdiction over an action, a motion to dismiss based on justiciability grounds is properly viewed in the context of [ ] Rule 12(b)(1)."); *Ladenburg Thalmann Fin. Servs.*, 2017 WL 685577, at *3 (same for ripeness).

[18] *E.g. Stearn v. Koch*, 628 A.2d 44, 47 (Del. 1993) (affirming trial court's *sua sponte* dismissal for mootness); *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 477 (Del. 1989) (dismissing an appeal because the underlying matter was unripe, when the issue of ripeness was first raised by the Supreme Court *sua sponte* at oral arguments).

[19] *Compare XL Specialty*, 93 A.3d at 1217–18 (Del. 2014) ("A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court in postponing review until the question arises in some more concrete and final form.") *with Re: PPL Corp. v. Riverstone Hldgs., LLC*, 2020 WL 3422397, at *3 (Del. Ch. Jun. 22, 2020) ("[M]ootness is fundamentally a matter of degree; there is no precise test for ascertaining with precision whether a particular claim has become moot. . . . Such a determination

-4-

when "it is certain" that a favorable judgment "could have no practical effect on the parties."[20] By contrast, a court dismisses a dispute as unripe if future events *may* "obviate the need for judicial intervention."[21] So in practical terms, mootness and ripeness both require a weighing of whether the non-movant presents a controversy currently within the court's subject matter jurisdiction.

## II. FACTUAL BACKGROUND

In October 2010, B/E Aerospace entered into the SPA with Defendants to purchase capital stock in two firms from Defendants, the firms' previous owners.[22] The SPA includes warranties and representations, including that "there have been no Releases of or exposure to any Hazardous Material that could reasonably be expected to form the basis of any Action against, or Liability of, any [of the purchased entities] under or pursuant to any Environmental Law."[23]

The SPA also provided for indemnification to B/E Aerospace for any breach in the representations and warranties,[24] first against the Escrow and then, B/E

---

therefore becomes an intensely factual inquiry, guided primarily by pragmatic considerations.") (quoting *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir.1987)) (ellipsis in original).

[20] *PPL Corp.*, 2020 WL 3422397, at *3 (citations omitted).

[21] *XL Specialty*, 93 A.3d at 1218.

[22] Am. Compl. ¶ 19 (D.I. 1).

[23] *Id.* at ¶ 20 (quoting the SPA § 4.15) (capitalization in the original).

[24] *Id.* at ¶ 22 (quoting the SPA § 9.1(b)).

-5-

Aerospace alleges, in a *pro rata* share among all named Defendants themselves.[25] For purposes of conducting the transaction, the SPA provided for Defendants to appoint a single entity as their representative for transaction-related disputes, which they did ("Representative").[26] Also in October 2010, Defendants established the Escrow just as the SPA required.[27]

After closing on the transaction, B/E Aerospace took possession of the Simpsonville Site, discovered tetrachloroethylene[28] contamination in the site's groundwater, informed the Representative, and demanded indemnification.[29] The

---

[25]  *Id.* at ¶ 23 (quoting the SPA § 9.4).

[26]  *Id.* at ¶¶ 25, 26.

[27]  *Id.* at ¶ 24.

[28]  An organic solvent with many commercial and industrial applications, tetrachloroethylene is often used in dry-cleaning and metal-cleaning products and for textile processing. *Leese v. Lockheed Martin Corp.*, 2013 WL 5476415, at *2 (D.N.J. Aug. 12, 2014) ("[T]etrachloroethylene, also known as perchloroethylene ("PCE"), [ ] is a [volatile organic compound] used in dry-cleaning and metal-cleaning products and for textile processing."); *H&H Holding, L.P. v. Chi Choul Lee*, 2014 WL 958878, at *1 (E.D. Pa. Mar. 6, 2014) ("Tetrachloroethylene (also known as Perchloroethylene) ("PCE"), [is] a chemical widely employed for dry cleaning fabrics and classified by the EPA as a likely human carcinogen."). And tetrachloroethylene contamination has led to many a lawsuit. *See, e.g, Litgo New Jersey Inc. v. Commissioner New Jersey Dept. of Environmental Protection*, 725 F.3d 369, 374 (3d Cir. 2013) (involving groundwater contaminated by tetrachloroethylene due to its extensive commercial and industrial use on-site); *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 279 (3d Cir. 2000) (addressing groundwater contamination from tetrachloroethylene due to its use as a solvent in manufacturing); *Westfarm Assocs. Ltd. P'ship v. Washington Suburban Sanitary Com'n*, 66 F.3d 669, 679 (4th Cir. 1995) (addressing groundwater contamination by tetrachloroethylene from its use in dry cleaning).

[29]  Am. Compl. ¶¶ 29, 30, 32 (D.I. 1).

Representative initially disputed liability.[30] Nevertheless, thereafter the Representative disbursed funds from the Escrow to pay the invoices B/E Aerospace submitted.[31] After the tetracholoethylene contamination was discovered, the parties agreed to a distribution to the Representative (on Defendants' behalf) of all Escrow funds except for $2,500,000; that amount represented the then-current estimate of cleanup and remediation costs for the Simpsonville Site.[32]

Since that time, B/E Aerospace has made several demands for indemnification payments from the Escrow.[33] While one invoice was outstanding when B/E Aerospace filed the initial Complaint in this case, B/E Aerospace received payment from the Escrow even before argument was heard on this motion.[34] And another invoice, submitted subsequent to the filing of the lawsuit, was likewise paid in full within months.[35] At present, $1,857,378.99 remains in the Escrow.[36] And the

---

[30] *Id.* at ¶ 33.

[31] *Id.* at ¶¶ 35, 36. The Amended Complaint does not make clear that B/E Aerospace agreed to the escrow disbursal, but the company makes its contemporaneous agreement clear in its Opposition Brief. Plf. Br. in Opp'n at 3.

[32] *Id.* at ¶ 36.

[33] *Id.* at ¶ 37.

[34] Plf. Ltr. at 2 (D.I. 14); Def. Ltr. at 3 (D.I. 15).

[35] Plf. Ltr. at 2–3 (D.I. 14); Def. Ltr. at 3 (D.I. 15).

[36] Def. Ltr. at 3 (D.I. 15).

preponderance of all payments against the Escrow have been related to the Simpsonville site.[37]

Of greatest concern to Plaintiffs is the fact that Defendants, through the Representative, asserted to B/E Aerospace that their liability is limited to the retained Escrow amount.[38]

### III. DISCUSSION

#### A. COUNT I - BREACH OF CONTRACT IS MOOT.[39]

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[40] In circumstances like this, a party may fulfill its obligation in either of two ways: "perform the contract or fully compensate the promisee for non-performance."[41]

B/E Aerospace's Complaint in sum alleges that Defendants made warranties and representations under the SPA, and that the Simpsonville Site's groundwater

---

[37] Argument Transcript, May 5, 2020, at 13. ("[B]y far and away the lion's share is the South Carolina property.") (D.I. 16).

[38] Am. Compl. at ¶ 41 (D.I. 1).

[39] The issue of Count I's mootness was raised at argument and was the subject of post-argument briefing. Arg. Tr. at 5–6, 23–28; Plf. Ltr. (D.I. 14); Def. Ltr. (D.I. 15).

[40] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005).

[41] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 703 (Del. 2019).

-8-

contamination breached those obligations. But B/E Aerospace concedes that Defendants have, to the present, consistently paid all invoices for remediation of that contamination from the $2,500, 000 Escrow fund retainer the parties agreed to.[42] So long as Defendants continue to pay B/E Aerospace in full for the breach of the warranty, there is no "resulting damage" to perfect B/E Aerospace's cause of action.[43] Defendants thus have, according to B/E Aerospace's own allegations, fulfilled the warranties and representations through payment.

In the briefs, B/E Aerospace notes that months may elapse between submission of an invoice and its payment.[44] But pay without fail Defendants'

---

[42] Arg. Tr. at 24 ("There are no outstanding requests, but they have never accepted our tender of indemnification.") (D.I. 16).

[43] Try as it may, B/E Aerospace has been unable to identify any damages—other than reimbursement of the actual site cleanup costs (which have been paid as incurred)—that are recoverable under its breach-of-contract claim. *See id.* at 24–27.

[44] Note that as B/E Aerospace does not allege that any of the agreements contained a clause asserting that time is of the essence, Defendants are entitled to reasonable time to perform the obligation. *See Brasby v. Morris*, 2007 WL 949485, at *3–4 (Del. Super. Ct. Mar. 29, 2007) ("Where the language of a contract does not contain a specific declaration that time is of the essence, the law permits the parties a reasonable time in which to tender performance. The reasonable time for performance is given 'regardless of whether the contract designates a specific date on which such performance is to be tendered.'") (internal citations omitted). Nor does B/E Aerospace ask the Court to interpret any of the agreements to have such a time-is-of-the-essence clause or other required payment period, which, if appropriate in this case, might invoke this Court's power to construe contracts. *See Heartland Delaware Inc. v. Rehoboth Mall Ltd. P'ship*, 57 A.3d 917, 923 n.25 (Del. Ch. 2012).

Representative has done—and, as both parties agree, continues to do—eliminating any injury and thereby rendering the matter moot.[45]

Situations which are "capable of repetition but evade review" are nevertheless justiciable as an exception to the mootness doctrine.[46] A matter is capable of evading review and should not be dismissed as moot, "when a defendant 'continues to defend the legality of its actions, making it not clear why the [defendant] would necessarily refrain from [the same conduct] in the future.'"[47] Defendants acknowledge this exception, but argue it is inapplicable as they no longer "continue[] to defend the conduct at issue"—i.e., any denial of liability for reimbursement of Simpsonville Site environmental cleanup costs from the Escrow—in Count I.[48] Prior to argument, Defendants had resisted acknowledging such breach of the warranties.[49] Because

---

[45] *See Mentor Graphics*, 818 A.2d at 963 ("A matter may become moot if the legal issue in dispute is no longer amenable to a judicial resolution; or, if a party has been divested of standing.") (quoting *General Motors Corporation v. New Castle County*, 701 A.2d 819, 821 (Del.1997)).

[46] *State Farm v. Davis*, 80 A.3d at 632–33.

[47] *Sanborn v. GEICO Gen. Ins. Co.*, 2016 WL 520010, at *10 (Del. Super. Ct. Feb. 1, 2016) (quoting *Cooper v. Charter Comm. Entm'ts, I, LLC*, 760 F.3d 103, 108 (1st Cir. 2014)).

[48] *See* Def. Ltr. at 3 (D.I. 15) ("[T]he cases on which Plaintiff most heavily relies involve claims that were found not to be moot because the defendants both: (a) continued to defend the conduct at issue; and (b) could resume it at any time in the future. *Those circumstances are not present here.*") (emphasis added); *id.* at 4 ("The Representative has paid all outstanding reimbursement requests. . . . There is no dispute about the propriety of such payments, and . . . Defendants do not contest them in any way. Nor have Defendants argued that the Representative should not authorize payment of future appropriate reimbursement requests.").

[49] Arg. Tr. at 25. ("They've not formally accepted our request for indemnification, but they have paid the outstanding requests.") (D.I. 16).

-10-

they have abandoned that position and no longer dispute the factual contention of the Simpsonville Site's contamination at the time of the transaction,[50] dismissal would not evade review.

### B. COUNT II – THE DECLARATORY JUDGMENT SOUGHT IS A QUESTION OF AVAILABLE REMEDIES FOR BREACH OF THE WARRANTIES AT ISSUE IN COUNT I THAT IS NOT SUFFICIENTLY RIPE.

"Delaware courts are statutorily authorized to entertain an action for a declaratory judgment, provided that an 'actual controversy' exists between the parties."[51] An actual controversy exists where four criteria are satisfied:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[52]

---

[50] *See AT&T Corp. v. Lillis*, 953 A.2d 241, 257 (Del. 2008) ("The scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which otherwise would [] require evidentiary proof.") (quoting Michael Graham, HANDBOOK OF FEDERAL EVIDENCE, 801:26 at 906 (6th ed. 2006)); *see also Merritt v. United Parcel Service*, 956 A.2d 1196, 1201–02 (Del. 2008) ("[J]udicial admissions, as distinguished from evidentiary admissions, are traditionally considered conclusive and binding both upon the party against whom they operate, and upon the court.").

[51] *XL Specialty Ins. Co.*, 93 A.3d at 1216–17.

[52] *Rollins International, Inc. v. International Hydronics Corp.*, 303 A.2d 660, 662–63 (Del. 1973) (quoting *Marshall v. Hill*, 93 A.2d 524, 525 (Del. Super. Ct. 1952)).

The ripeness doctrine and inquiry's "central concern is to avoid hypothetical questions."[53] An action for declaratory judgment challenged on ripeness grounds presents two principal dangers—squandering scarce judicial resources, and intervening in a controversy where the specific facts do not necessitate judicial intervention.[54] Making this determination involves a "weighing process . . . which should turn importantly upon a practical evaluation of the circumstances of the case."[55] A matter "is not ripe when it is contingent, meaning that it is dependent on the occurrence of some future event(s) before its factual predicate is complete."[56]

Whether the remediation costs will overrun the Escrow and thereby require a judicial determination of Count II is a question of the magnitude of damages accruing from the contamination in breach of the warranties—the nub of Count I. If remediation is eventually completed without exhausting the Escrow, the issue of whether the Escrow is the limit of Defendants' liability will never be litigated. Likewise, if the remediation eventually breaches the Escrow ceiling and Defendants agree at that time to pay the deficiency, again the matter will never be litigated. Only

---

[53] *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987).

[54] *Id.*

[55] *Stroud*, 552 A.2d at 480 (internal citations omitted).

[56] *K&K Screw Products, L.L.C. v. Emerick Capital Investments, Inc.*, 2011 WL 3505354, at *9 (Del. Ch. Aug. 9, 2011).

-12-

if the remediation eventually exhausts the Escrow prior to completion *and* Defendants insist at that time that the Escrow is the limit of their liability will the issues presented in Count II be ripe for judicial determination.

The current rate of remediation expensing would need to continue until the 2040s to exhaust the Escrow.[57] Any dispute over liability beyond the Escrow is thus highly remote and contingent.

Though the future costs of site remediation are of uncertain measure, courts are competent to—with proper expert testimony—reduce the cost of the breach of an environmental contamination warranty to a present judgment.[58] Had B/E

---

[57] $1,857,378.99 represents slightly over seventy-four percent of the original $2,500,000 retained in the Escrow nine years ago at the conclusion of the transaction. That expenditure rate implies an exhaustion date twenty-five years hence, in the mid-2040s. In the face of this record, the Court cannot now accept B/E Aerospace's mere caution—unadorned with any supporting evidence or well-pleaded allegation set forth in its complaint—as the necessary ripening agent for its declaratory judgment claim. *E.g.* Arg. Tr. at 28 ("I don't know that you can equate the past spend rate on an environmental contamination and remediation case with what will be applied in the future."); *id.* at 29 ("[W]e can't equate the pace at which the costs have been incurred to date with future costs."); Am. Compl. at ¶ 53 (D.I. 1) ("B/E Aerospace expects that the future environmental cleanup and remediation costs at the Simpsonville Site alone will exceed two million dollars ($2,000,000), which exceeds the amount currently in the Escrow Account."). *See Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (Court "is not required to accept every strained interpretation of the allegations proposed by the plaintiff."); *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)). (Court should "ignore conclusory allegations that lack specific supporting factual allegations.").

[58] *See Action Mfg. Co., Inc. v. Simon Wrecking Co., Inc.*, 287 Fed.Appx. 171, 176 (3d Cir. 2008) ("[W]here past costs are known and future costs are speculative" in cleaning up environmental degradation, courts are capable of such estimation and are even justified in applying an "uncertainty premium . . . 'to ensure that the parties assuming cleanup are not unduly burdened by unforeseen future costs, and to acknowledge the benefit settling parties receive in resolving their liability early.'").

Aerospace sought such a consolidated action for breach of warranty, the suit would likely be ripe. It has chosen instead to pursue indemnification for expenses as they come up, a view of contractual obligations by which the dispute is unripe. This is a substantive and not technical distinction—indemnifying bills as they accrue places the risk that the contamination costs will rise on Defendants, where a singular money judgment for breach of warranty would place the risk on B/E Aerospace.

## IV. CONCLUSION

B/E Aerospace alleges that it purchased capital assets that included ownership of the Simpsonville Site through the SPA. It says that agreement warrants and represents that there was no contamination at the Simpsonville Site, and those warranties and representations are enforceable by indemnification provisions. B/E Aerospace further alleges that the Simpsonville Site was contaminated in violation of those representations and warranties and that it has incurred expenses remediating that contamination. But, because Defendants have fully compensated every dollar of injury B/E Aerospace claims as a result of the failure of the warranty, any cause of action that would have accrued under B/E Aerospace complaint has been rendered moot.

Despite that mootness, it would still be appropriate for the Court to exercise its discretion to try the case if Defendants resisted liability. But, because Defendants

-14-

concede the breach of the warranties, the controversy no longer requires judicial intervention.

Likewise, B/E Aerospace's second Count, seeking a declaration that its potential recovery or indemnification is not limited to the Escrow account, is not yet ripe. That Count is a question of damages, asking the Court to speculate on liability limits that may never be reached. There is no reason for the Court to make such a ruling at the present time.

For those reasons, the Defendants' Motion is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**