

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-28-2008

# Action Mfg Co Inc v. Simon Wrecking Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Action Mfg Co Inc v. Simon Wrecking Co" (2008). *2008 Decisions.* Paper 787.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/787

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3679
_____

ACTION MANUFACTURING CO., INC.;
ALCOA, formerly known as Aluminum Company of America;
ARMSTRONG WORLD INDUSTRIES, INC.;
ABB INC., formerly known as Fischer & Porter Company;
BECKETT COMPANY, L.P.; GENERAL ELECTRIC COMPANY/RCA;
GENERAL MOTORS CORPORATION;
HAMILTON TECHNOLOGIES, INC. (BULOVA TECHNOLOGIES, L.L.C.)
HAMILTON WATCH COMPANY, INC. (SWATCH GROUP U.S., INC.);
HANDY & HARMAN; HAYFORK, L.P., formerly known as
HAMILTON PRECISION METALS, INC.;
TUBE CO.; HERCULES INCORPORATED;
J.W. REX; LAFRANCE CORPORATION;
LUCENT TECHNOLOGIES, INC.; PENFLEX, INC.;
PLYMOUTH TUBE COMPANY; REILLY PLATING COMPANY;
SIEMENS ENERGENY & AUTOMATION, INC.,
formerly known as MOORE PRODUCTS, CO.;
SUNROC CORPORATION; SYNTEX (USA), INC.;
UNISYS CORPORATION; VIZ LIQUIDATION TRUST

v.

SIMON WRECKING COMPANY, INC.; SIMON RESOURCES, INC.;
MID-STATE TRADING COMPANY, INC.;
S & S INVESTMENTS, INC.; SCHWAB-SIMON REALTY CORPORATION;
TRENTON REALTY CORPORATION; QUAKER CITY, INC.;
J & J SPILL SERVICE & SUPPLIES, INC.; LIGHTMAN DRUM CO., INC.;
RESOURCE TECHNOLOGY SERVICES, INC.; PETROCON, INC.;
MCCLARIN PLASTICS, INC.; AMETEK, INC.; CSS INTERNATIONAL CORP.;
EMECO INDUSTRIES, INC.; DAVID K. ROBSON, INC.;
FAIRFAX VALET, INC., formerly known as Fairfax Cleaners;
A & J SCREW MACHINE PRODUCTS, INC.; HULLTRONICS, INC.;
KOSEMPEL MANUFACTURING COMPANY;
KEYSTONE ENVIRONMENTAL SERVICES, INC.;

PHILADELPHIA STEEL DRUM CO., INC.; NW CONTROLS, INC.;
SINGER SEWING COMPANY; FBF, INC.;
STEWART GOLEN; RESOURCE RECOVERY ATLANTIC, INC.

Simon Wrecking Company,
and Simon Resources Inc.,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-08964)
District Judge:  Honorable Anita B. Brody

_____

Submitted Under Third Circuit LAR 34.1(a)
March 4, 2008

Before:  SCIRICA, *Chief Judge*, FISHER and ROTH, *Circuit Judges*.

(Filed:   July 28, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Defendants Simon Wrecking and its successor Simon Resources (collectively

"Simon") appeal the District Court's order finding Simon liable as a transporter of

hazardous wastes and awarding a monetary judgment to the plaintiffs in their contribution

action under the Comprehensive Environmental Response, Compensation, and Liability

Act ("CERCLA").  For the following reasons, we will affirm the order of the District

Court.

2

# I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

This litigation arose over the contamination of the Malvern TCE Superfund Site in Malvern, Pennsylvania, where Chemclene Corporation had previously processed and stored industrial waste for many years. In 1996, the EPA informed the litigants that they were potentially responsible parties ("PRPs") under CERCLA § 107(a). Appellees, members of the Chemclene Site Defense Group ("CSDG"), entered into a consent decree with the EPA and the Pennsylvania Department of Environmental Protection, agreeing to undertake remediation of the site. In 2002, the CSDG brought a contribution action under CERCLA § 113 against the remaining PRPs, including Simon.

The District Court ultimately found Simon liable to the CSDG for contribution as a transporter of hazardous waste under CERCLA §§ 113(f) and 107(a). The District Court found that the expenses submitted by CSDG, with one exception, were consistent with the National Contingency Plan ("NCP") as mandated by CERCLA § 107(a)(4)(B), yielding $4,224,701 in allocable past costs. Based on the remedies approved in the EPA's Record of Decision ("ROD"), the District Court estimated future allocable costs for the site to be $17,872,964. In addition, the Court found that CSDG would incur $1,000,000 to the EPA in oversight costs. Thus, the Court determined that the total (past and future) allocable

response cost was $23,097,665. CSDG received settlements in the amount of $6,630,670, resulting in a remaining allocable cost amount of $16,466,995. Based on relative shares of waste and other factors, the District Court determined that Simon was responsible for 6.25% of the remaining allocable costs. In addition, the District Court applied an uncertainty premium of 50% to this amount, increasing Simon's responsibility to 9.38% of the remaining allocable costs. On July 7, 2006, based on these calculations, the District Court ordered Simon to pay CSDG $1,544,604.

## II.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. We will set aside a District Court's findings of fact only if they are clearly erroneous. *FMC Corp. v. United States Dep't of Commerce*, 29 F.3d 833, 838 (3d Cir. 1994). We exercise de novo review over the District Court's conclusions of law. *United States v. Dentsply Intern., Inc.*, 399 F.3d 181, 186 (3d Cir. 2005). "A district court's allocation of CERCLA response costs in a contribution action is reviewed for abuse of discretion. An abuse of discretion occurs when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 446 (3d Cir. 2005) (internal citations and quotation marks omitted).

4

## III.

Simon argues that (1) Appellees failed to prove that Simon is liable as a transporter under CERCLA; (2) entry of monetary judgment, rather than declaratory judgment, for future costs was erroneous, as future costs are unknown, and the "uncertainty premium" was improperly applied to past costs; and (3) Appellees failed to prove that past costs were necessary and compliant with the NCP.

CERCLA § 107 provides that liability may only be imposed on a "responsible party." *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258 (3d Cir. 1992). CERCLA § 107(a) defines four categories of responsible parties, including:

> any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . .

*Id.* § 107(a)(4). Simon does not dispute that it accepted hazardous substances for transport to the site, or that it did actually transport these substances to the site. It disputes only that Simon "selected" the site. We have construed transporter liability to include those parties that actively participated in the decision regarding the location for disposal of a generator's waste. *Tippins Inc. v. USX Corp.*, 37 F.3d 87, 94 (3d Cir. 1994) ("[A] person is liable as a transporter not only if it ultimately selects the disposal facility, but also when it actively participates in the disposal decision to the extent of having had substantial input into which facility was ultimately chosen.").

5

Appellees adduced a number of pieces of circumstantial evidence that together show that the District Court did not clearly err when it determined that Simon selected or actively participated in the selection of the Chemclene site: (1) Chemclene employees did not know where Simon's waste originated, indicating that the waste generators had no relationship with Chemclene. This lack of relationship implies that the waste generators were unlikely to have specifically selected the Chemclene site as their disposal site; (2) in a letter regarding Simon's contract with a particular generator, the President of Chemclene informed Simon that Chemclene was in compliance with the relevant regulations, raising the inference that Simon was advising that generator, and thus taking an active role in site selection; (3) Simon brought many loads of waste to Chemclene over a period of years for many different customers, supporting the inference that Simon often had input into site selection; and (4) a contracting officer at one generator with whom Simon contracted testified that it was that generator's policy not to tell a transporter where to take its waste, raising the inference that Simon, and not the generator, selected Chemclene as the site for that generator's waste. This evidence is sufficient to support the District Court's finding that it was more likely than not that Simon had actively participated in the selection of the Chemclene site. Therefore, the District Court did not clearly err in holding Simon liable as a transporter under CERCLA.

Simon next argues that the District Court erred in awarding a monetary judgment on this contribution claim, as opposed to declaratory judgment. However, Simon cites no

6

statutory authority for this proposition. CERCLA § 113(g)(2) requires declaratory judgments for cost recovery actions, but § 113(g)(3), which governs contribution actions, contains no such requirement. Simon relies primarily on *Beazer*, 412 F.3d 429, for the proposition that a declaratory judgment is required in contribution actions. *Beazer*, however, does not stand for this proposition. *Beazer* itself relied in part on a First Circuit case, *United States v. Davis*, 261 F.3d 1 (1st Cir. 2001), which held that declaratory judgments were permitted in contribution actions, but not required. *Id.* at 46. That circuit has also held that a monetary judgment may be an applicable remedy in a contribution action. *See Am. Cyanamid Co. v. Capuano*, 381 F.3d 6 (1st Cir. 2004). In that case, the Court held that

> [t]he district court acted consistent with CERCLA's goals by entering a monetary judgment before the remediation was completed. Entering a monetary judgment fosters an incentive for timely settlements and provides finality for those parties that choose to settle.
> . . . .
> The fact that the monetary judgment is entered based on an estimate, therefore, does not on its own make that judgment unjust. The district court entertained many possibilities regarding the estimate of total response costs and both sides had opportunities to suggest whether the estimated response cost was too low or too high. After reviewing the possible estimated costs, the district court [came to a conclusion regarding] the best estimate of total response costs and entered a judgment using that estimate. We believe it was not error to do so.

*Id.* at 26-27. Similarly, monetary relief was appropriate in this case because remediation could take more than thirty years, and such relief provides finality, as well as a greater likelihood that Appellees will be able to actually collect on their judgment. In

7

contribution cases, the Court has the power to fashion remedies based on equitable considerations. CERCLA § 113(f)(1) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."). Thus, the District Court did not abuse its discretion in awarding monetary relief in this case.

Simon also takes issue with the "uncertainty premium" applied by the District Court. As Simon concedes, the ultimate total cost of cleanup "will continue to be a moving target." It therefore asserts that the application of an uncertainty premium of fifty percent to past and future costs is in error, where past costs are known and future costs are speculative in nature. However, it is precisely because of this uncertainty that the District Court awarded the premium in this case. The District Court reasoned that the use of an uncertainty premium is often an effective mechanism to "to ensure that the parties assuming cleanup are not unduly burdened by unforeseen future costs, and to acknowledge the benefit settling parties receive in resolving their liability early." *Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 332 (E.D. Pa. 2006). Because it found that there was evidence that the ultimate total cost of cleanup could be higher than originally anticipated and that the cleanup could take thirty years, the District Court found that an uncertainty premium on total costs was an equitable method of acknowledging the benefit received by Simon in resolving its liability prior to the completion of the cleanup. Because the District Court is permitted to allocate costs in such an equitable manner,

8

CERCLA § 113(f)(1), it has not abused its discretion in imposing an uncertainty premium here.

Simon finally argues that Appellees have produced no evidence to support the conclusion that the costs already incurred by the CSDG are "necessary costs of response incurred . . . consistent with the national contingency plan" as required by CERCLA § 107(a)(4)(B). This argument is meritless. As the regulations state,

> For the purpose of cost recovery under section 107(a)(4)(B) of CERCLA:
> . . .
> (ii) Any response action carried out in compliance with the terms of an order issued by EPA pursuant to section 106 of CERCLA, or a consent decree entered into pursuant to section 122 of CERCLA, will be considered "consistent with the NCP."

40 C.F.R. § 300.700(c)(3). Here, the CSDG members have entered into a consent decree pursuant to CERCLA § 122. As Simon has introduced no evidence that the CSDG has failed to comply with the terms of the consent decree, the CSDG's actions are therefore presumed to be consistent with the NCP. *See*, *e.g.*, *Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 100 F.3d 792, 796-97 (10th Cir. 1996). Regardless, Appellees have introduced evidence that the costs they have incurred are "necessary to the containment and cleanup of hazardous releases." *Redland Soccer Club, Inc. v. Dep't of Army of the United States*, 55 F.3d 827, 850 (3d Cir. 1995) (internal citation and quotation marks omitted). Chris Young, the project manager for the CSDG, testified that the costs incurred by the CSDG were directed to the investigation and cleanup of the site. The fact that some of the costs were incurred in the evaluation of less costly alternative

9

remedies does not render such costs unnecessary. Therefore, the District Court did not err in determining that response costs as calculated by the Court were necessary and compliant with the NCP.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.