IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DERRICK POWELL, | § | |
| | § | No.   310, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 0909000858 (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |

Submitted:   September 20, 2017
Decided:   October 27, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

On this 27th day of October 2017, upon consideration of the parties' briefs, oral argument, and the record on appeal, it appears that:

(1)    The Appellant, Derrick Powell, was convicted of First Degree Murder and related crimes for recklessly causing the death of Officer Chad Spicer.   He appeals from the Superior Court's denial of his Motion for Post-Conviction Relief. He first claims that the Superior Court erred by finding that the State did not commit a *Brady* violation when it failed to disclose an eyewitness to the crimes until after the close of the evidence at trial.   He also claims that appellate counsel was

ineffective for failing to raise the *Brady* issue on direct appeal. We find these claims to be without merit and affirm.

(2) Powell and two co-conspirators attempted to commit a robbery in the parking lot of a McDonald's restaurant in Georgetown, Delaware. The attempt was unsuccessful, and they fled the scene in a Chrysler Sebring vehicle. Christopher Reeves was driving the Sebring. Derrick Powell was in the rear seat behind the driver. Luis Flores was in the rear seat behind the empty front passenger seat. Soon a police car occupied by Georgetown officers Spicer and Shawn Brittingham attempted to pull the Sebring over. After a short pursuit, Reeves brought his vehicle to an abrupt stop and opened his driver's car door. The police car struck the open driver's door and came to a stop. Reeves got out of his car, slid across the hood of the police car, and fled. Officer Brittingham pursued him on foot. Moments later, Officer Brittingham heard a gunshot. Flores testified that Powell fired a handgun at the stopped police car. The shot struck and killed Officer Spicer. Eyewitnesses testified that a person fitting Powell's description exited the Sebring immediately after the shot was fired, holding a gun. They testified that the person then fled. All agreed on the direction in which he fled. They did not all agree on which door of the vehicle he exited, but all agreed it was not the driver's door. Flores remained at the scene and tried to help Officer Spicer out of the police car.

2

About 20 minutes later, Powell was found with the murder weapon and taken into custody.

(3) At trial defense counsel argued there was reasonable doubt as to whether Powell was the shooter and that the evidence demonstrated that it was more likely that Flores was the shooter. There was some testimony that the person carrying the gun got out through the rear passenger side of the Sebring and that Flores then also exited through the passenger side. Defense counsel argued that it was implausible to think that Powell shot from the driver's side and then climbed over Flores, who weighed about 300 pounds, to exit on the passenger side, suggesting that Flores had been the one on the driver's side. The defense also relied on other evidence, including DNA evidence from a defense expert which indicated that Flores was probably a major contributor of DNA on the trigger of the gun, and Reeves and Powell were possibly minor contributors.

(4) Opening statements at Powell's trial were delivered on January 20, 2011. On Friday, January 28, Lieutenant Robert Hudson, an investigating police officer, was contacted by a previously unknown witness named Damian Coleman. Lieutenant Hudson interviewed Coleman on Sunday, January 30. Coleman stated that he was seated on the porch of a house when a car being chased by police went by. The cars stopped and the driver had trouble getting out and had to jump over

3

the police car to escape. He then saw a light skinned black man get out of the passenger side, point a gun over the car at the police car, and then run off behind a blue house. After he saw the man with the gun, Coleman went into his house and called 911. Lieutenant Hudson took notes and on February 2 prepared a supplemental police report.

(5) The defense rested and the evidence closed on February 3, 2011. The State first disclosed Coleman's existence to Powell's trial attorneys on February 4, 2011. On Monday, February 7, trial counsel disclosed the recent discovery of Coleman to the trial judge during an office conference. The trial judge ordered that the State bring Coleman to the courthouse so that defense counsel could interview him, and stated that he would allow the defense to reopen its case if defense counsel wanted to present testimony from Coleman. After interviewing Coleman, defense counsel elected not to call him as a witness. Closing arguments then followed.

(6) This Court reviews the Superior Court's decision on a motion for post-conviction relief for an abuse of discretion.[1] Questions of law and constitutional claims are reviewed *de novo*.[2]

---

[1] *Zebroski v. State*, 12 A.3d 115, 119 (Del. 2010).
[2] *Id.*

4

(7) A *Brady* violation occurs where there exists "suppression by the prosecution of evidence favorable to an accused . . . [that] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[3] There are three elements to a *Brady* violation: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[4]

(8) In denying Powell's *Brady* claim, the Superior Court first noted that the claim was not technically a *Brady* claim because the potential evidence was not suppressed. The court further reasoned that Coleman would have testified that a light skinned black male exited the vehicle, pointed a handgun over the vehicle roof at the police car, and then ran behind a blue house in the direction where Powell was found minutes later. The court further reasoned: since defense counsel decided not to call Coleman after interviewing him, it must be concluded that the information Coleman possessed was not favorable to the defense; eyewitnesses' testimony differed as to which door the gun man exited; "muddying" the waters further on the door issue, together with additional testimony that the shooter ran in the direction

---

[3] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[4] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005).

5

where Powell was captured, would not have advanced Powell's case; defense counsel were justifiably concerned that Coleman may identify Powell; a reasonable person would have concluded that Coleman's testimony was not only not helpful, but potentially harmful; and Coleman's testimony was not valuable impeachment evidence, given the conflicting statements already in the record as to which door the shooter exited. Thus, the Superior Court reasoned that none of the three elements of a *Brady* claim had been established. We find no error in the Superior Court's analysis. The same analysis leads to the conclusion that appellate counsel was not ineffective for not raising Coleman as an issue on appeal. The Superior Court also expressed its disapproval of the State's delay in revealing Coleman and his potential testimony until after the defense had rested, at trial and again in its post-conviction relief opinion, as do we.

(9) On appeal the State also argues that Powell's *Brady* claim is barred under Superior Court Criminal Rules 61(i)(3) and (4) as they existed at the time his motion was filed.[5] We agree that his claim is barred by Rule 61(i)(3). Rule 61(i)(3) bars any claim that was not asserted in the proceedings leading to the judgment of conviction unless the movant shows cause for relief from the procedural default and prejudice from a violation of the movant's rights. In this case no *Brady*

---

[5] Superior Court Criminal Rule 61 has been modified since Powell's motion was filed.

6

claim was asserted at trial or on appeal.    Powell's *Brady* claim is barred under Rule 61(i)(3) because his rights were not violated and he suffered no prejudice.[6]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


/s/ James T. Vaughn, Jr.
Justice

---

[6] Since Powell cannot show prejudice, the narrow relief from the bar of Rule 61(i)(3) set forth in Rule 61(i)(5) has no effect here.