# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GXP CAPITAL, LLC, a Nevada limited liability company, | § § § | Nos. 247, 2020 and 248, 2020 |
| Plaintiff Below, Appellant, | § § § § | Court Below – Superior Court of the State of Delaware |
| v. | § § | C.A. No. N18C-07-267 |
| ARGONAUT MANUFACTURING SERVICES, INC., a Delaware corporation, TELEGRAPH HILL PARTNERS III, L.P., a Delaware limited partnership, and TELEGRAPH HILL PARTNERS III INVESTMENT MANAGEMENT, LLC, a Delaware limited liability company, | § § § § § § § § § § § § | |
| Defendants Below, Appellees. | § § | |

Submitted: March 24, 2021
Decided: May 20, 2021

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

David L. Finger, Esq. (*argued*), FINGER & SLANINA, LLC, Wilmington, Delaware; *Attorney for Plaintiff-Appellant GXP Capital LLC*.

John L. Reed, Esq. (*argued*), Peter H. Kyle, Esq., DLA PIPER LLP (US), Wilmington Delaware; Brian A. Foster, Esq., and Julie Gryce, Esq., DLA PIPER LLP (US), San Diego, California; *Attorneys for Defendants-Appellees Argonaut Manufacturing Services, Inc., Telegraph Hill Partners III, L.P., and Telegraph Hill Partners III Investment Management, LLC*.

**SEITZ**, Chief Justice:

GXP Capital, LLC filed two lawsuits against the defendants in different federal courts. GXP alleged that the defendants violated non-disclosure agreements by using confidential information to buy key assets at bargain prices from GXP's parent company. Those cases were dismissed for lack of personal and subject matter jurisdiction. GXP then filed a third suit in Delaware Superior Court. The Superior Court stayed the case on *forum non conveniens* grounds to allow GXP to file the same case in California state court—a forum the court decided had a greater connection to the dispute and was more convenient for the parties.

On appeal GXP makes two arguments—first, the Superior Court did not apply the correct *forum non conveniens* analysis when Delaware is not the first-filed action, the prior-filed lawsuits have been dismissed, and no litigation is pending in another forum; and second, the defendants waived any inconvenience objections in Delaware under the forum selection clause in their non-disclosure agreements.

We affirm the Superior Court's judgment. The trial court properly exercised its discretion in this case's procedural posture to stay the Delaware case in lieu of dismissal when another forum with jurisdiction exists and that forum is the more convenient forum to resolve the dispute. And certain of the defendants' consent to non-exclusive jurisdiction in California did not waive their right to object to venue in other jurisdictions, including Delaware.

2

## I.

GXP Capital, LLC ("GXP") is a limited liability company organized and headquartered in Nevada.[1] GXP CDMO, Inc., formerly known as Bioserv Corporation, is GXP's parent company. Following bankruptcy proceedings, Bioserv Corporation assigned to GXP substantially all its assets, including this action.

Argonaut Manufacturing Services, Inc., is a Delaware corporation headquartered in California and is the successor entity to Argonaut EMS ("Predecessor"), a California sole proprietorship. Telegraph Hill Partners III, L.P., ("THP III") is a Delaware limited partnership with Telegraph Hill Partners III Investment Management ("THP"), a Delaware LLC, operating as THP III's general partner. THP III and THP are both headquartered in and operate out of California. We will refer to Argonaut, THP III, and THP as "the defendants."

GXP alleges that Predecessor, THP III, and THP violated non-disclosure agreements by misusing confidential business information about Bioserv Corporation disclosed during acquisition talks. Specifically, GXP argues that Argonaut, THP III, and THP—working with others—acquired key Bioserv Corporation assets at below-market prices in bankruptcy proceedings by using and disclosing protected confidential information.

---

[1] The facts are drawn from the Superior Court's opinion, *GXP Capital, LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186 (Del. Super. Ct. 2020).

GXP filed suit first in the Federal District Court for the District of Nevada. It voluntarily dismissed the lawsuit because that court lacked personal jurisdiction over the defendants. GXP filed another lawsuit in the Southern District of California. That court dismissed the suit for a lack of subject matter jurisdiction because the parties lacked complete diversity. Trying a third time, GXP filed a complaint in the Superior Court of Delaware, alleging nine causes of action against the defendants. The complaint was eventually whittled down to two counts—breach of non-disclosure agreements and misappropriation of confidential information.[2]

In response to the defendants' motion to dismiss for *forum non conveniens*, the Superior Court found California a more convenient forum and stayed the case to allow GXP to file suit in California state court "solely to preserve the possibility of litigation here should the state courts of California close their doors to this dispute."[3] In its decision, the court explained that under the procedural posture of this case— when the Delaware action is not the first-filed action and no other case is pending in another jurisdiction—the court weighs the convenience factors without applying any presumption or heightened burden in favor of a particular forum or party according to our decision in *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*[4]

---

[2] The Superior Court issued a May 4, 2020 decision to stay the litigation in lieu of dismissal. GXP filed a Motion for Reargument under Superior Court Rule 59(e). The court withdrew its May 4, 2020 opinion and order and issued a superseding opinion on July 1, 2020.
[3] *GXP Capital, LLC v. Argonaut Mfg. Servs., Inc.*, 2020 WL 4464471, at *6 (Del. Super. Ct. Aug. 3, 2020).
[4] 173 A.3d 1033 (Del. 2017).

The Superior Court also relied on its decision in *National Union Fire Insurance Co. of Pittsburgh*, *PA v. Axiall Corp.*,[5] where the court weighed the *forum non conveniens* hardship factors in the competing jurisdictions against each other. After weighing the factors in this case, the Superior Court decided that California was the preferred forum to resolve the dispute.

GXP filed two appeals from the Superior Court's stay order—a direct appeal from the court's stay order and another as an interlocutory appeal under Supreme Court Rule 42. The Superior Court granted in part GXP's application for certification of an interlocutory appeal. The two issues certified to our Court from the Superior Court are as follows:

> a.      Is the *Axiall* comparative burden analysis the correct framework to analyze *forum non conveniens* motions in the intermediate *Gramercy* posture where the courts of another state indisputably possess personal and subject matter jurisdiction over the case?
>
> b.      Is a trial court within its discretion to grant a *Gramercy* stay in lieu of dismissal when that relief is, in the court's judgment, the least burdensome to the parties under the *forum non conveniens* factors?[6]

This Court accepted the interlocutory appeal under Supreme Court Rule 42(b) and consolidated the two appeals.[7] We issued an order stating in part:

---

[5] 2019 WL 4303388 (Del. Super. Ct. Sept. 11, 2019), *appeal denied*, 219 A.3d 523 (Del. 2019).
[6] *GXP Capital*, 2020 WL 4464471, at *7.
[7] *GXP Capital*, *LLC v. Argonaut Mfg. Servs.*, *Inc.*, Consol. Nos. 247, 2020 and 248, 2020 (Del. Oct. 7, 2020) (ORDER).

In addition to any other arguments the parties wish to make, the parties' briefs should address: (i) whether the Stay Order is appealable as a final judgment; and (ii) the questions certified for interlocutory review by the Superior Court.[8]

*Forum non conveniens* motions are addressed to the trial court's discretion. Thus, we must determine "whether the findings and conclusions of the Superior Court are supported by the record and are the product of an orderly and logical [reasoning] process."[9] "If they are, whether or not reasonable people could differ on the conclusions to be drawn from the record, this Court must affirm . . . ."[10] Whether the Superior Court applied the correct standard of review is a question of law that we review *de novo*.[11] Questions of contract interpretation are reviewed *de novo*.[12]

## II.

GXP filed a direct and an interlocutory appeal from the Superior Court's stay order. Before turning to the merits, we address our jurisdiction to hear GXP's direct

---

[8] *Id.* at 9.

[9] *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014) (alteration in original) (quoting *Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 37 (Del. 1991)).

[10] *Id.*

[11] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 638 (Del. 2001) ("A claim that the trial court employed an incorrect legal standard, however, raises a question of law that this Court reviews *de novo*."); *SmithKline Beecham Pharms. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 450 (Del. 2000) ("Whether the [trial court] applied the correct standard . . . is a question of law which is reviewed *de novo*.").

[12] *Urdan v. WR Capital Partners, LLC*, 244 A.3d 668, 674 (Del. 2020).

appeal. Unless we accept an interlocutory appeal under Supreme Court Rule 42, our jurisdiction is limited to appeals from final orders.[13] As we have explained:

> An aggrieved party can appeal to this Court only after a final judgment is entered by the trial court. A final judgment is generally defined as one that determines the merits of the controversy or defines the rights of the parties and leaves nothing for future determination or consideration. In short, a final judgment is one that determines all the claims as to all the parties. The test for whether an order is final and therefore ripe for appeal is whether the trial court has clearly declared its intention that the order be the court's "final act" in a case.[14]

A stay order is a non-final order.[15] Thus, we do not have jurisdiction to hear GXP's direct appeal from the Superior Court's stay order.

---

[13] Supr. Ct. R. 42; *see Bowen v. E.I. duPont de Nemours & Co., Inc.*, 879 A.2d 920, 922 (Del. 2005) ("Except for interlocutory appeals that are accepted in our discretion, this Court has no jurisdiction over Superior Court determinations in civil proceedings that are not final."); *see also Levinson v. Conlon*, 385 A.2d 717, 720 (Del. 1978) ("[T]he proscription is intended to minimize two highly undesirable problems inherent in [interlocutory appeals]: the fragmentation of a case and a delay in its final disposition.").

[14] *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 579 (Del. 2002) (citation omitted); *accord Mentor Graphics Corp. v. Shapiro*, 818 A.2d 959, 962 (Del. 2003) ("Rather, essential to the analysis is whether the order 'ends the litigation on the merits and leaves nothing for the trial court to do but execute the judgment.'") (quoting *Lipson v. Lipson*, 799 A.2d 345, 347 (Del. 2001)).

[15] *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Axiall Corp.*, 219 A.3d 523, 2019 WL 4795508, at *2 (Del. Oct. 1, 2019) (TABLE) (denying interlocutory appeal of granted motion to stay on the ground of *forum non conveniens*); *iPCS, Inc. v. Sprint Nextel Corp.*, 956 A.2d 31, 2008 WL 2942136, at *2 (Del. Aug. 1, 2008) (TABLE) (stating that the denial of a "motion to dismiss or stay on the ground of *forum non conveniens*" is an "interlocutory ruling"); *Derdiger v. Tallman*, 765 A.2d 950, 2000 WL 1589929, at *1 (Del. Aug. 29, 2000) (TABLE) (refusing interlocutory appeal of stay order for *forum non conveniens*); *ANR Pipeline Co. v. Shell Oil Co.*, 525 A.2d 991, 992 (Del. 1987) (discussing accepted interlocutory appeal of decision to stay litigation in Delaware for *forum non conveniens*); *see also Coaxial Commc'ns, Inc. v. CNA Fin. Corp.*, 367 A.2d 994, 997 (Del. 1976) ("Beyond doubt, the Chancellor's order denying the stay was interlocutory[.]"); *Apple Computer, Inc. v. Exponential Tech., Inc.*, 1999 WL 39547, at *14 (Del. Ch. Jan. 21, 1999) ("Where granted, a motion to stay is not a final decision on the merits, but an interlocutory order. Thus, appellate review of the trial court's decision is limited.").

GXP's arguments to the contrary are unpersuasive. According to GXP, by staying the case instead of dismissing it, the Superior Court "created a unique circumstance where GXP will not be able to get appellate review."[16] If GXP filed in California state court, it argues, a live controversy would no longer exist before this Court and thus deprive it of appellate review. This circumstance, GXP claims, violates constitutional separation of powers through "judicial revision of appellate rights granted by law."[17] GXP also points to federal law, where federal courts have adopted the "collateral order" and "effectively out of court" exceptions to the finality requirement for appellate review.[18]

What GXP ignores, however, is the availability of interlocutory review under Supreme Court Rule 42.[19] Indeed, we accepted an interlocutory appeal from the Superior Court's certified questions in the case before us. Given this well-established path to appellate review, we see no need to apply or adopt other carve-outs to our jurisdiction when reviewing stay orders.[20] We recognize our ruling has

---

[16] Opening Br. at 26.
[17] *Id.* at 27.
[18] *Id.* at 24–26.
[19] *See States Marine Lines v. Domingo*, 269 A.2d 223, 225 (Del. 1970) (holding that "denial of a motion to dismiss on the ground of [f]orum non conveniens . . . meets the tests for appealability of an interlocutory order in this jurisdiction").
[20] The Superior Court's stay order is not a "collateral order" and therefore not a final order for appeal purposes. *See Gannett Co., Inc. v. State*, 565 A.2d 895, 900 (Del. 1989) (recognizing collateral review of a final decision "since it determined a [civil] matter independent of the issues to be resolved in the criminal proceeding itself, bound persons who were non-parties in the underlying criminal proceeding and had a substantial, continuing effect on important rights") (alteration in original) (quoting *United States v. Schiavo*, 504 F.2d 1, 5 (3d Cir. 1974), *cert. denied*, 419 U.S. 1096 (1974)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

little practical effect in this appeal. In accepting the interlocutory appeal we invited the parties to raise whatever issues they wished in addition to the certified issues. But we dismiss GXP's direct appeal from the Superior Court's stay order for lack of jurisdiction.

## III.

Next, we turn to whether the non-exclusive venue provision in the NDA prohibited the defendants from arguing that Delaware was an inconvenient forum. The non-disclosure agreements contained the following restriction:

> This Agreement shall be governed by the laws of the jurisdiction in which the Disclosing Party is located (or if the Disclosing Party is based in more than one country, the county in which its headquarters are located) (the "Territory") and the parties agree to submit disputes arising out of or in connection with this Agreement to the non-exclusive [jurisdiction] of the courts in the Territory.[21]

The Superior Court held as a matter of plain language that the parties' agreement to non-exclusive jurisdiction in California did not waive objections or act as consent to venue in any other jurisdiction, including Delaware. It is, after all, an agreement that California is an appropriate but non-exclusive forum. Nonetheless,

_____

1, 10 & n.11 (1983) ("*Idlewild* does not disturb the usual rule that a stay is not ordinarily a final decision for purposes of § 1291, since most stays do not put the plaintiff 'effectively out of court.'"). GXP is also not effectively out of court—we are reviewing its appeal from the stay order, and by agreement of the defendants, GXP can file suit in California without fear of dismissal on statute of limitations grounds.

[21] App. to Opening Br. at A60 (Confidential Disclosure Agreement). "[T]he parties agreed that the word 'jurisdiction' was erroneously omitted between *exclusive* and *of*." *GXP Capital*, 234 A.3d at 1199 n.62.

9

GXP argues that the parties agreed "to place no limit on venue, essentially waiving claims of inconvenience, and expected courts to respect that choice equally."[22] In other words, the parties' non-exclusive forum selection provision operated implicitly as consent to venue not only in California, but anywhere else in the United States. GXP points us to two cases to support its argument—our decision in *Ingres Corp. v. CA, Inc.*,[23] and the Court of Chancery's application of *Ingres* in *Utilipath, LLC v. Hayes*.[24] In *Ingres*, we held that contracting parties are bound by an exclusive forum selection clause even if applying *forum non conveniens* might lead to a different result. In *Utilipath*, the Court of Chancery followed *Ingres* and held that the same contractual modification of exclusive forum selection clauses applied equally to non-exclusive provisions. Relying on *Utilipath*, GXP argues that the forum selection clause defeats the defendants' *forum non conveniens* objections.

In *Utilipath*, however, the parties expressly designated Delaware in the forum selection clause, thus barring inconvenience objections in Delaware. Here, the parties agreed to California as a non-exclusive forum but did not waive *forum non conveniens* objections for litigation outside of California. The Superior Court correctly held that, applying the plain language of the forum selection clause, the defendants did not waive the right to object to Delaware as an inconvenient forum.

---

[22] Opening Br. at 30.
[23] 8 A.3d 1143 (Del. 2010).
[24] 2015 WL 1744163 (Del. Ch. April 15, 2015).

IV.

Delaware courts are often called upon to resolve forum disputes when related cases are filed in other courts. The proper *forum non conveniens* analysis is associated with the names of the Supreme Court cases applying the doctrine in various contexts—*General Foods Corp. v. Cryo–Maid, Inc.*,[25] *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Engineering Co.*,[26] and *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*[27] Each of these cases dealt with a unique procedural posture—"a first-filed Delaware case with no case pending elsewhere (the *Cryo–Maid* test); a second-filed Delaware case with another first-filed case pending elsewhere (the *McWane* test); and . . . [the] *Gramercy* [test]—a later-filed Delaware case after another jurisdiction had dismissed a first-filed case for *forum non conveniens*."[28] "All these scenarios call upon the courts to apply, in one form or another, the same *forum non conveniens* factors."[29] The factors applied are:

> (1) the relative ease of access to proof; (2) the availability of a compulsory process for witnesses; (3) the possibility to view the premises, if appropriate; (4) all other practical problems that would make the trial easy, expeditious, and inexpensive; (5) whether the controversy is dependent upon Delaware law, which the courts of this State should decide rather than those of another jurisdiction; and (6) the pendency or non-pendency of a similar action in another jurisdiction.[30]

---

[25] 198 A.2d 681 (Del. 1964).
[26] 263 A.2d 281 (Del. 1970).
[27] 173 A.3d 1033 (Del. 2017).
[28] *Aranda v. Phillip Morris USA Inc.*, 183 A.3d 1245, 1250 (Del. 2018).
[29] *Id.*
[30] *Id.* at 1251.

11

Depending on the posture of the case, "what changes is the strength of the presumptions applied."[31]  As we explained in *Gramercy*:

> When a case is first-filed, Delaware courts award dismissal only when the defendant has established overwhelming hardship, thus tilting the analysis in the plaintiff's favor. When a case is later-filed, and its predecessors remain pending, *McWane*'s "strong preference for the litigation of a dispute in the forum in which the first action relating to such dispute is filed" applies and the analysis is tilted in favor of the defendant. But when a case is later-filed and its predecessors are no longer pending, the analysis is not tilted in favor of the plaintiff or the defendant. In that situation, Delaware trial judges exercise their discretion and award dismissal when the *Cryo–Maid* factors weigh in favor of that outcome.[32]

## A.

The parties agree that this action is not the first-filed case that implicates the "overwhelming burden" requirement under *Cryo-Maid*.  *McWane*'s presumption of dismissal also does not apply because no other prior actions are pending.  Thus, *Gramercy* and its neutral burden assessment supplies the correct framework for this appeal.  Under *Gramercy*, the trial court "still applies *Cryo–Maid* straightforwardly when a plaintiff has not chosen Delaware first,"[33] but "the analysis is not tilted in favor of the plaintiff or the defendant."[34]

---

[31] *Id.* at 1250–51.
[32] *Gramercy*, 173 A.3d at 1044 (citation omitted).
[33] *Id.* at 1042.
[34] *Id.* at 1044.

12

In this case the Superior Court analyzed the *forum non conveniens* factors in a neutral fashion, comparing its analysis to the review exercised in its decision in *Axiall* when two cases are filed at about the same time:

> When two cases are filed at approximately the same time, Delaware courts will weigh an application for a stay "under the traditional *forum non conveniens* framework" without "preference for one action over the other" to avoid rewarding the victor in a "race to the courthouse." In such cases, the reviewing court neutrally compares hardships imposed on each party by the adverse party's chosen forum, and stays the Delaware action if the foreign proceeding is less burdensome overall.[35]

In the order certifying interlocutory appeal, the Superior Court held that although no case was pending in California, "the undisputed personal and subject matter jurisdiction of [California state] courts over this dispute militated in favor of applying a similar framework and considering the relative hardships to the parties each would present."[36]

---

[35] *GXP Capital*, 234 A.3d at 1195 (quoting *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 116 (Del. Ch. 2009)); *see also HFTP Invs., L.L.C. v. ARIAD Pharms., Inc.*, 752 A.2d 115, 122 (Del. Ch. 1999) ("In balancing all of the relevant factors, the focus of the analysis should be which forum would be the more 'easy, expeditious, and inexpensive' in which to litigate. That approach, which imposes no special or heightened burden of persuasion, leads straightforwardly to the following burden of persuasion: towards which of the two competing fora do the *forum non conveniens* factors preponderate?").

[36] *GXP Capital*, 2020 WL 4464471, at *6.

GXP argues that the Superior Court misapplied the *Gramercy* comparative burden analysis by relying on *Axiall*.[37] In *Axiall*,[38] the Superior Court issued a stay in lieu of dismissal of a Delaware action in deference to an ongoing, simultaneously-filed West Virginia action involving the same issues. The Superior Court stayed the case instead of dismissing it because the plaintiffs could not show overwhelming hardship from litigating in Delaware. In reaching this conclusion, the court compared the hardships imposed on each party by the adverse party's chosen forum and granted relief from litigating in the jurisdiction imposing the greater hardship.[39]

GXP argues that a comparative burden balancing is inappropriate here because the defendants have the initial burden of demonstrating that the plaintiff's chosen forum would cause hardship to the defendants. According to GXP, requiring the plaintiff to prove comparative hardship in the first instance denies the plaintiff the presumption respecting its choice of forum. In essence, GXP advocates for a burden-shifting regime whereby the movant has the initial burden of demonstrating hardship before the court may factor in the other party's comparative hardship.

---

[37] This issue was raised by the Superior Court in granting interlocutory appeal. *See GXP Capital*, 2020 WL 4464471, at *7. GXP argues that because neither party raised or briefed the issue below, this Court's answer to whether the comparative analysis is proper under the intermediate *Gramercy* posture would be an advisory opinion. Reply Br. at 18. The Superior Court's *Gramercy* analysis, however, relied on the *Axiall* comparative burden framework in granting the defendants' requested relief. *See id.* at *6 ("In particular, the Court relied by analogy on its own prior decision in [*Axiall*].").

[38] In *Axiall*, the Superior Court denied certification of an interlocutory appeal, and this Court denied the interlocutory review. *Axiall*, 219 A.3d 523.

[39] *See Axiall*, 2019 WL 4303388, at *4.

14

The Superior Court did not err when it examined the comparative burdens within the *Gramercy* framework. Under *Gramercy*, "the analysis is not tilted in favor of the plaintiff or the defendant."[40] While the movant bears the burden of establishing the *Cryo–Maid* factors, *Gramercy*'s intermediate posture requires the trial court exercising its discretion to "award dismissal when the *Cryo–Maid* factors weigh in favor of that outcome."[41] Applying *Gramercy*, the trial court respected the defendants' initial burden, placed the *Cryo-Maid* factors on a scale, and then decided which way the scale tipped without putting a finger on the scale. It applied the *Cryo-Maid* factors correctly.

B.

We also find without merit GXP's objections to how the Superior Court applied the *Cryo–Maid* factors. For purposes of this appeal, only four of the six factors are weighted concerns, and the bulk of GXP's arguments center on how the *Gramercy* analysis differs from weighing the *Cryo-Maid* factors when there are background presumptions present in other procedural postures. In this case, while none of the *forum non conveniens* factors alone were dispositive, many factors pointed to California—not Delaware—as the proper forum and tipped the scale in

---

[40] *Gramercy*, 173 A.3d at 1044.
[41] *Id.*

15

favor of relief. Considered together, the Superior Court did not abuse its discretion in staying this action to allow GXP to file in a more convenient forum.

i.

The first two *Cryo-Maid* factors require review of the relative ease of access to proof and whether compulsory process for witnesses is available. The Superior Court observed that "the parties all have their headquarters and operations in California or Nevada" and the defendants' "sole connection" to Delaware is their place of incorporation.[42] The court found that a plurality of the third-party witnesses that the defendants identified reside in California, with none residing in Delaware. This meant "that the parties will be unable to compel the attendance of apparently *any* of the third-party witnesses[.]"[43] The court also found that in-person testimony bore increased importance because "a multiplicity of witnesses [is] identified by name, and their relevance to the alleged wrongful conduct is clear and direct. Many of the witnesses are named by GXP as 'co-conspirators' in the alleged wrongs, and hence their credibility will be a key issue."[44]

Relying on this Court's decision in *Berger v. Intelident Solutions, Inc.*,[45] GXP argues that the operative test is whether litigating in Delaware would prevent the

---

[42] *GXP Capital*, 234 A.3d at 1196.
[43] *Id.* at 1197 (emphasis in original).
[44] *Id.* at 1197 n.49 ("Reliance on depositions alone presents obvious and consequential hardship under the specifics of this case.").
[45] 906 A.2d 134 (Del. 2006).

defendants from being able to introduce evidence to support their case. GXP also contends that the Superior Court did not make any findings about whether this was the case for the defendants, and that therefore, this factor does not support the Superior Court's relief. Moreover, according to GXP, since 1964 when this Court decided *Cryo–Maid*, evidence has undergone a shift to electronic data and courts now "recognize that transmittal of evidence electronically is not a burden, particularly in corporate and commercial disputes."[46]

GXP's reliance on *Berger* is misplaced. There, this Court found that although all the relevant evidence was outside of Delaware, the defendants would not face overwhelming hardship because of that fact. We acknowledged that Delaware would be "inconvenient," but the defendants failed to identify specific evidence that could not be produced in Delaware. The defendants also failed to prove that litigating in Delaware would impede access to witness testimony. Thus, the defendants had not met their burden of proving that litigating in Delaware would present an overwhelming hardship.[47] Overwhelming hardship, however, is not the *Gramercy* standard. *Gramercy* simply requires that "Delaware trial judges exercise

---

[46] Opening Br. at 34 (citing *Hall v. Maritek Corp.*, 170 A.3d 149, 161 (Del. Super. Ct. 2017), *aff'd*, 182 A.3d 113 (Del. 2018); *In re Asbestos Litig.*, 929 A.2d 373, 384–85 (Del. Super. Ct. 2006); *Asten v. Wangner*, 1997 WL 634330, at *3 (Del. Ch. Oct. 3, 1997)).
[47] *Berger*, 906 A.2d at 136.

17

their discretion and award dismissal when the *Cryo–Maid* factors weigh in favor of that outcome."[48]

Further, the Superior Court expressly found that "GXP concedes that the parties all have their headquarters and operations in California or Nevada" and that "GXP does not deny . . . that the parties will be unable to compel the attendance of apparently *any* of the third-party witnesses[.]"[49] These findings were supported by the record.[50] With all the evidence and a plurality of the witnesses outside of Delaware, the Superior Court found that litigation in Delaware would present problems that California would not—namely, presentation of witnesses. Thus, the court did not abuse its discretion in giving some weight to this factor.[51] Finally, that electronic transmission of evidence lessens the burden of litigating where evidence may be found outside of the chosen forum does not render this factor irrelevant when weighing the *forum non conveniens* hardship factors under *Gramercy*.

---

[48] *Gramercy*, 173 A.3d 1044.

[49] *GXP Capital*, 234 A.3d at 1196–97 (emphasis in original).

[50] *See* App. to Opening Br. at A134–36 (Foster Aff. ¶¶ 7–11); *id.* at A168–69 (Grossman Aff. ¶¶ 4–5, 10); *id.* at A174–75 (Woodard Aff. ¶¶ 4, 9).

[51] GXP also argues that deposition testimony is sufficient and the need for in-person testimony should not weigh in favor of relief for the second factor—availability of a compulsory process—when electronic means of testimony are available. GXP points to this Court's decision in *Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444 (Del. 1965). *Kolber*, however, considered the distance between Wilmington and New York, but found it "no sufficient reason" to justify dismissal under the overwhelming hardship standard. *Id.* at 446. This Court expressly recognized that "the best test of the credibility of witnesses requires their appearance before the trier of fact." *Id.* Thus, based on the Superior Court's findings recited above, the court did not abuse its discretion in giving some weight to a lack of a compulsory process in Delaware.

18

ii.

Next, the Superior Court concluded that the inspection of premises factor was "inconsequential" because "[n]either side suggests that any site inspections will be necessary for this litigation."[52] Regarding the choice of law factor, neither party disputed that California law governs this case. The court recognized, however, that Delaware courts often apply other states' laws. Even so, the court held that choice of law "adds little—but some—weight toward *forum non conveniens* relief."[53] And the court found that the pendency or non-pendency of other cases factor "can rightly be considered neutral within a *Gramercy* analysis" because GXP's prior federal actions were dismissed without the possibility of further lawsuits.[54]

GXP's objections focus on the choice of law factor. GXP argues that applying California law should not weigh in favor of the defendants because Delaware courts often decide legal issues under other jurisdictions' laws. To bolster its argument, GXP points out that when California law is applied in this case, the issues are neither novel nor unsettled, meaning that this factor should not be given any weight in the *forum non conveniens* analysis.

---

[52] *GXP Capital*, 234 A.3d at 1197 (quoting *GTE Mobilnet Inc. v. Nehalem Cellular, Inc.*, 1994 WL 116194, at *5 (Del. Ch. Mar. 17, 1994)).
[53] *Id.*
[54] *Id.* at 1198.

We find that the Superior Court properly gave the choice of law factor "little—but some—weight." It is correct that Delaware courts are well-equipped to apply California law, especially where there are no novel or open questions present.[55] But, "[t]he choice of law factor, while relevant to establishing hardship and inconvenience, primarily focuses on 'Delaware's interest in the litigation,' a focus evident in the phrasing of the factor itself."[56] While this Court has consistently held that "[t]he application of foreign law is not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens*,"[57] it does not mean it is dispositive of the issue in this case. In the intermediate *Gramercy* posture, when the trial judge exercises their discretion without any background presumptions, a trial court does not abuse its discretion by giving some, non-dispositive weight to the fact another jurisdiction's law applies, even where the law to be applied is routine and not unsettled.[58] *Gramercy* did not alter or eliminate the choice of law factor's

---

[55] *See Berger*, 906 A.2d at 137 ("Delaware courts often decide legal issues—even unsettled ones—under the law of other jurisdictions.").

[56] *Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 271 (Del. 2001) (quoting *Ison v. E.I. DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 843 (Del. 1999)).

[57] *Berger*, 906 A.2d at 137 (alteration in original) (quoting *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1200 (Del. 1997)).

[58] *See Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 1002 (Del. 2004) (holding that application of Argentine law "weighs slightly, although not significantly" in the defendant's favor); *Sequa Corp. v. Aetna Cas. & Sur. Co.*, 1990 WL 123006, at *4 (Del. Super. Ct. July 13, 1990) ("The need to apply another state's law will not be a substantial deterrent to conducting litigation in this state."); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 559 A.2d 1301, 1305–06 (Del. Super. Ct. 1988) ("If it were necessary to adjudicate some or all issues of coverage using the laws of other States, this possibility alone would not weigh overwhelmingly in favor of the defendants.").

analysis other than to alleviate the defendants from the burden of establishing that the hardship of litigating in Delaware would be overwhelming.

iii.

Turning to *Cryo-Maid*'s residual factor, the Superior Court held that "the availability of an alternative forum in the California state courts highlights the needless practical difficulties that a Delaware forum presents."[59] The California courts are available to GXP, all of the defendants operate out of, and have conceded jurisdiction in, California, and GXP previously filed suit in California, which suggested to the court "the strong amenability of all parties to suit in California."[60] By contrast, Delaware's interest in regulating the conduct of its corporate citizenry because they are formed under our laws is strongest where "issues of substantive corporate governance and structure are implicated."[61] Otherwise, this important interest can be outweighed by other considerations.

According to GXP, the Superior Court erred when it weighed the residual factor by not placing enough emphasis on Delaware's interest in providing a neutral forum for disputes involving Delaware-incorporated entities rather than this action's overall minimal connection to Delaware. GXP also argues that by incorporating

---

[59] *GXP Capital*, 234 A.3d at 1198.
[60] *Id.*
[61] *Id.*

here, the defendants "should be deemed to have waived any argument that litigating in Delaware is inconvenient to them."[62]

We have previously explained that "the 'Other Practical Considerations' factor of *Cryo–Maid* is neither hollow in meaning nor rigid in application" and "where it is appropriate, a trial court may weigh the efficient administration of justice and analogous considerations under the rubric of the 'Other Practical Considerations' *Cryo–Maid* factor."[63]  That is precisely what the Superior Court did in its analysis.  The Superior Court recognized Delaware's interest in regulating its corporate citizens' conduct but decided that Delaware's public interest in such cases is strongest where substantive issues of corporate governance are implicated.  That is not the case here.   This is a contract and tort dispute.  The court also weighed the defendants' minimal connection to Delaware accompanied by the relatively minor interest that Delaware itself has in hearing this action.[64]  Putting the defendants' place of incorporation aside, Delaware has virtually no connection to this dispute.  Finally, the availability of an alternate forum can be a relevant consideration, and the defendants are amenable to suit California, where GXP filed suit before coming

---

[62] Opening Br. at 40.

[63] *Martinez*, 86 A.3d at 1112–13 ("This public interest factor will seldom, in isolation, be dispositive of whether dismissal on the grounds of *forum non conveniens* is warranted.").

[64] *See Nokia Sols. & Networks Oy v. Collision Commc'ns, Inc.*, 2020 WL 2095829, at *6 (Del. Super. Ct. Apr. 30, 2020) ("Finally, the Court is unconvinced by Nokia's argument that the fact that Collision is incorporated [in Delaware] weighs in favor of denying the motion.  As noted above, Delaware has no substantial interest in adjudicating this action, unlike an action implicating a Delaware corporation's internal affairs.").

to Delaware.[65]  It was not an abuse of discretion to consider these factors.  Rather, the Superior Court properly applied *Gramercy*'s straightforward assessment of the *Cryo–Maid* factors, which, overall, favored California as the appropriate forum.

V.

GXP's direct appeal is dismissed.  We answer the certified questions as follows:

> a. Is the *Axiall* comparative burden analysis the correct framework to analyze *forum non conveniens* motions in the intermediate *Gramercy* posture where the courts of another state indisputably possess personal and subject matter jurisdiction over the case?
>
> Yes.  The trial court should assess the comparative burdens of litigating in the opposing jurisdictions when a case has not been filed in the foreign jurisdiction, but that jurisdiction has personal and subject matter jurisdiction over the parties and the case.
>
> b.  Is a trial court within its discretion to grant a *Gramercy* stay in lieu of dismissal when that relief is, in the court's judgment, the least burdensome to the parties under the *forum non conveniens* factors?
>
> Yes.  The trial court has the discretion to grant a stay instead of dismissal, especially when, as here, the defendants might have substantial procedural or statute of limitations defenses to the complaint if filed in the foreign jurisdiction.

The judgment of the Superior Court is affirmed.

---

[65] *See Aranda*, 183 A.3d at 1252 ("We think that treating the issue as a factor to be considered, rather than as a requirement, gives the issue the weight it deserves in the *forum non conveniens* analysis.").